**UNITED STATES of America,
Plaintiff-Appellee,
v.
Rick R. LACEY, Defendant-Appellant.**

No. 80–2052
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

June 19, 1981.

442

Ernest Moulos, Wichita, Kan., for defendant-appellant.

James R. Gough, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before BROWN, POLITZ and TATE, Circuit Judges.

TATE, Circuit Judge:

The defendant Lacey appeals from revocation of his probation. Because the findings upon which the revocation is based are inadequate to review Lacey's contentions, we remand for further proceedings.

*Context Facts*

On August 12, 1977, Lacey was placed on supervised probation for five years, after pleading guilty to an offense involving possession of marijuana with intent to distribute it. In 1980, primarily arising from an arrest on a drug offense in September, 1979, revocation proceedings were instituted against Lacey. Revocation was sought on the basis of three specific violations of probation-conditions:

1. That upon his arrest on September 19, 1979 for possession of illegal drugs, Lacey was found to be in possession of 48.82 grams of methamphetamine and 0.73 grams of marijuana. (It was noted that the state criminal charges for this violation had been dismissed on June 5, 1980.)

2. That upon his arrest, Lacey had in possession and displayed a fictitious and fraudulently altered driver's license, which conduct constituted a state misdemeanor.

3. That, according to investigative reports surrounding the September 1979 arrest, Lacey had travelled outside the district of his probation without proper authorization, in that he travelled to North Carolina where he transacted business under an assumed name.

Lacey denied the truth of all of these claimed violations. At the revocation hearing, in which Lacey was represented by counsel, two police officers and a state chemist testified.[1] Their testimony, which was not contradicted, was as follows:

(a) The first police officer testified that he had observed the defendant Lacey leaning over the front seat of a Volvo automobile and passing something to another man on the right side of the vehicle, who then walked to a Corvette parked six feet away and placed a red-covered object in the right

---

1. The probation officer also testified by way of general summary, over objections that his testimony was hearsay. The officer's testimony was solely by way of reporting the information (unattributed to source or by date) upon the basis of which the revocation was instituted. We do not understand the government to rely upon this testimony as evidence of the violations.

side of the Corvette. Within five minutes, the officer walked over to the Corvette and saw a red baseball cap within the vehicle, within which was a plastic bag with a white substance. He was present when the second testifying officer (see below) made pictures of the cap and took it into his possession. When Lacey was asked for identification after his arrest, he referred the police officers to his identification papers in his pocket; when the officer retrieved the license there found, it was in the name of a Victor M. Wohrley. The driver's license so taken was introduced into evidence at the revocation hearing, with photocopy substituted for the original.[2]

(b) The second police officer was a detective from the county sheriff's forensic unit. He was called out to the Volvo dealership, where he was shown the Corvette. He photographed the car and the open red baseball cap on its front seat, in which there was a clear plastic bag containing a white substance. (The latter photograph was introduced in evidence at the revocation hearing.) He placed the bag in a sheriff's evidence container, sealed under his name, and he identified its subsequent chain of custody. He also identified the evidence container and the clear plastic bag and contents at the revocation hearing.

(c) The state forensic chemist identified the evidence container and the plastic bag, obtained by her from the second testifying police officer, as containing the substance she tested. The substance was methamphetamine, an illegal drug.

None of the above evidence was contradicted.

In summary: As to Charge 1, from first-hand eyewitness testimony, the district court could reasonably find that the defendant Lacey was in possession of and handed over to another person a package containing (as properly connective subsequent testimony showed) *methamphetamine*, as charged. As to the remainder of Charge 1, there was no evidence introduced that Lacey also possessed *marijuana* (although from explanatory comment apparently some had been found in the ashtray of the Volvo).

As to Charge 2, from first-hand testimony the district court could properly find that, at the time of his arrest, Lacey had in his possession and displayed as his own identification a driver's license in the name of another. Although there was no evidence that the license was fictitious or fraudulently altered as alleged, this conduct constituted a violation of an applicable state misdemeanor statute that it was unlawful for any person "[t]o display or to report as one's own any driver's license not issued to such person." Kansas State Acts, Title 8–260(3) (1975).

As to Charge 3, the government introduced no evidence whatsoever that Lacey had left the district of his probation without authorization, as charged.[3]

*The Defendant's Contentions on Appeal*

The defendant Lacey raises three contentions on appeal. Our difficulty in review-

---

**2.** The defendant's counsel objected to the admission of the license as based on hearsay. The objection was apparently based upon the officer's testimony that a radio check was made on whether "Wohrley" was wanted by the police for any charge. (The report was negative.) The objection is without merit.

**3.** We should finally note that, at the outset of the hearing, Lacey's counsel expressly stated that his primary defense was that the seizure of the drug and of the driver's license was the product of an illegal search, as had been held in the state court proceedings, resulting in the dismissal of the state charges. The district court made no express finding as to this contention, although its attitude to it was expressed at the time counsel noted the argu-

ment: The judge stated that he was not bound by the state court ruling—"I am still concerned about probation. They can't go running around, even if they don't commit a serious crime, they still have to comply with the regulations the probation department set for them." At the close of the hearing, the district court overruled the defendant's formal objection to the admission of the exhibits as illegally seized. The ruling was apparently correctly based upon the decisions of this circuit that (at least in the absence of police harassment, and none is shown here), the exclusionary rule does not apply in revocation proceedings. *United States v. Wiygul*, 578 F.2d 577 (5th Cir. 1978); *United States v. Brown*, 488 F.2d 94 (5th Cir. 1973).

ing the first two contentions (1. alleged insufficiency of the evidence to support probation revocation; 2. improper admission and reliance upon hearsay and in denying confrontation) stems directly from the third contention: "The district court erred in not making findings as to the evidence relied upon and reasons for revoking probation."

As our summary of the evidence indicates, the district court could properly have found the first charge proved—unlawful conduct, i. e., the possession of illegal drugs—and could, in our opinion, within its discretion have revoked probation on that ground alone. Although the second charge is proved as consisting of less culpable conduct than charged, and the third charge is not proved and is at most hinted at in the hearsay summary of the probation officer (see note 1), the district judge would not abuse his discretion if, on the first ground alone, he had revoked probation and also (despite otherwise exemplary conduct for three years of probation) denied a reduction of imprisonment for the five-year sentence originally imposed.

Our difficulty here is that, without the district court's findings as to the reason for revocation of probation, we would ordinarily be uncertain as to whether, for instance, the district court additionally based its actions upon a hearsay report of other illegal conduct denied and not proved by the evidence to have occurred.[4]

*The District Court's Reasons*

The reasons given for the revocation of probation state general principles and do not contain findings of what conduct charged was proven. At the conclusion of the hearing, after argument by counsel, the court announced as sole explanation for its revocation:

When the Court grants probation to a felon that has been convicted of an offense against the United States, he is assuming that there is a justifiable reason and that the defendant who is placed on probation—and that's assuming—

hopefully will lead a life while on probation that is the nature of being exemplary. Doesn't have to be necessarily an out and out criminal violation to be in violation of the order of the Court as far as probation is concerned.

The Court is going to revoke the probation of this defendant, Rick R. Lacey.

In the light of argument by counsel immediately preceding this ruling, an argument could be made that the findings are implicit. The government argued only that it had proved the drug-possession offense of September, 1979, and that the defendant Lacey had used another's license for identification in violation of state misdemeanor law. The government implicitly abandoned any effort to prove the more extended criminal conduct implied by Charge 3, or the fraudulent alteration of a license alleged by Charge 2. (The defense counsel's argument questioned only the sufficiency of the evidence and the inadmissibility of the illegally seized evidence; neither of which argument is meritorious for present purposes, for the reasons previously indicated.)

In the light of the argument potentially restricting the contentions to the issues argued, we could construe the district court's reasons for revocation to the following effect: (1) the drug possession offense was definitely proved; and (2) this by itself justified the district court's exercise of its discretion to revoke the probation, even though so far as the record shows the transfer of drugs was between acquaintances on a non-commercial basis and was the only incident of probation violation during an otherwise exemplary three years prior to the hearing. On the other hand, without express findings to this effect, the defendant's argument is not totally insubstantial that the district court, in accord with its ruling rejecting hearsay objections in a revocation hearing (see note 4), improperly considered—as reasons not only for revoking probation but also for refusing to reduce the sentence (although three years un-

---

4. In overruling a hearsay objection to the probation officer's testimony (see note 1), the district court stated: "I am going to let him testify to hearsay. I don't think that a matter of this nature requires strict attention to [hearsay objection]."

der supervised probation had passed since imposition of the original five-year sentence)—a general hearsay summary of why revocation proceedings were instituted (see note 1), even though in fact no evidence was presented that the defendant had without authorization left the district and conducted business in another state under an assumed name.

Under the minimum due process rights afforded a defendant in a parole or revocation proceeding, he is entitled to "a written statement by the factfinders as to the evidence relied on and reasons for revoking...." *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 786, 93 S.Ct. 1756, 1759–60, 1761, 36 L.Ed.2d 656 (1973). See also: *U. S. v. Tyler*, 605 F.2d 851, 852–53 (5th Cir. 1979). For the reasons stated, the general conclusory reasons by the district court for revoking probation do not meet this due process requirement that the revoking judge state the factual findings and the reasons relied upon for revocation.

*Conclusion*

Accordingly, we remand this case for further proceedings not inconsistent with the views expressed. We do not intimate that, on the remand, the district court must reopen the proceedings to take further evidence rather than instead to formulate its findings and reasons on the basis of the evidence previously heard; nor, on the other hand, do we intimate that the district court is foreclosed from reopening the proceedings or from reconsidering, in the light of its findings, its previous rulings on the revocation and on the denial of a reduction of sentence. The defendant's right to further appeal from the ultimate action of the district court is reserved.

CASE REMANDED.