OPINION
 

 SPROUSE, Circuit Judge:
 

 Sammy Copley appeals from a judgment of the district court revoking a term of previously imposed supervised release, and sentencing him to a term of imprisonment to be followed by supervised release. We affirm the court’s action in revoking the supervised release and sentencing Copley to a period of incarceration, but reverse the portion of the judgment imposing a new term of supervised release.
 

 In January 1989 Copley pled guilty to a federal counterfeit money charge. He was sentenced to thirty months incarceration, to be followed by thirty-six months supervised release. Federal law mandates the imposition of one condition of release, and commits the imposition of additional conditions to the trial judge’s discretion. Included in Copley’s sentence for counterfeiting violations were three conditions of supervised release: the required one, that he not commit another federal, state, or local crime during the period of supervision,
 
 see
 
 18 U.S.C.A. § 3583(d), and two permitted by section 3583(d), that he not possess a firearm or other dangerous weapon and that he submit to random urinalysis and participate in a drug abuse program as directed by his probation officer.
 

 After having served his prison term and six months of his supervised release term, Copley was arrested on state charges of cultivating marijuana. Copley’s probation officer filed a petition for a hearing to determine whether Copley had violated the first condition of his supervised release— that he not commit another federal, state, or local crime during the period of supervision. The petition alleged that Copley “failed to abide by this condition in that he had ... possessed] marijuana, which is a violation of both Federal and state statutes as evidenced by his arrest on July 11, 1991, on charges of Cultivating Marijuana in Williamson, Mingo County, West Virginia.”
 

 At the revocation hearing on August 15, 1991, evidence was presented concerning the cultivation of marijuana in and around a house in which Copley resided. During the period of supervised release, Copley and others lived in the house in Williamson, West Virginia. The house consisted of a main floor, a basement, and an attic. A set of steps led to the main floor and from there one could reach the attic. The basement was self-contained: one could enter it only by using a separate set of steps. Copley lived in the basement. His brother and brother’s girlfriend lived on the main floor, and a third person lived in the attic.
 

 In July 1991 police conducting a counterfeit money investigation obtained a warrant to search the house. They found no counterfeiting evidence, but discovered sixty-three marijuana plants. The plants were found in the attic, in a small room next to a bedroom on the main floor, and in a garden ten to fifteen feet behind the house. In the attic the police also found 1.63 grams of marijuana seeds, seed beds, grow lights, and irrigation hoses.
 

 One of the officers testified that at the time of the search Copley was standing in the backyard “next to the plants.” Copley, however, indicated that he was seated at a picnic table at the side of the house.
 

 After hearing this evidence, the district court concluded:
 

 Based upon the evidence I have, the Court would find that there is clear and convincing evidence, both direct and circumstantial, which would support the conclusion that Mr. Copley is in violation of his condition[] of supervised release, and that there is every reason to believe that Mr. Copley and/or others, perhaps including [Copley’s brother], were engaged in marijuana cultivation, which is a felony under West Virginia law and under federal law as well.
 

 
 *831
 
 Since I’ve heard no real evidence to the contrary to any of the conclusions that I’ve drawn, I have to assume that that is the state of facts, and that provides a basis for the Court to make a conclusion that I have made here.
 

 The court then remanded Copley to the custody of the United States Marshal, scheduled sentencing, and ordered an updated presentencing report at Copley’s request.
 

 The next day, in Copley’s absence, the court entered an order formally revoking Copley’s supervised release. On October 15, 1991, the court imposed a sentence of twenty-four months in prison to be followed by thirty months of supervised release.
 

 Copley appeals on five grounds. He contends that (1) the evidence was insufficient to support a finding that he possessed or cultivated marijuana, (2) his rights were violated when the court revoked the supervised release in his absence, (3) he was denied due process because the court failed to provide a written statement of the evidence on which it relied, (4) he was denied due process because the court failed to provide a written statement of the reasons on which it based its decision to revoke, and (5) the district court acted without authority in ordering a term of supervised release to be served after the newly imposed term of incarceration. We disagree with Copley’s first four contentions, although his third and fourth merit discussion.
 

 The district court had only to find by a preponderance of the evidence that Copley had violated a condition of his supervised release.
 
 See
 
 18 U.S.C.A. § 3583(e)(3). Because the evidence of Copley’s marijuana cultivation was more than sufficient to meet this standard, the court did not abuse its discretion. Nor did the district court order revocation in Copley’s absence. It is clear that the court revoked the supervised release at the conclusion of the August 15 hearing, when Copley was present, and merely entered the formal order on August 16, when Copley was absent.
 

 Turning to Copley’s two due process arguments, we recognize of course that “[t]he Due Process Clause of the Fourteenth Amendment imposes procedural ... limits on the revocation of the conditional liberty created by probation.”
 
 Black v. Romano, All
 
 U.S. 606, 610, 105 S.Ct. 2254, 2256, 85 L.Ed.2d 636 (1985) (citing
 
 Gagnon v. Scarpelli,
 
 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973);
 
 Morrissey v. Brewer,
 
 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). Logic would extend this protection to hearings to revoke supervised release.
 
 *
 
 Copley contends that absent from his revocation proceedings were two of the critical requirements of due process. He stresses that the district court neglected to support its conclusions with either a written discussion of the evidence or a written statement of the reasoning on which it relied in revoking his supervised release. A flaw of that dimension could, of course, require a remand for another hearing. In our view, however, as in the view of several of our sister circuits, a transcribed oral finding can serve as a “written statement” for due process purposes when the transcript and record compiled before the trial judge enable the reviewing court to determine the basis of the trial court’s decision.
 
 See United States v. Barth,
 
 899 F.2d 199, 201-02 (2d Cir.1990),
 
 cert. denied,
 
 — U.S. —, 111 S.Ct. 953, 112 L.Ed.2d 1042 (1991);
 
 United States v. Yancey,
 
 827 F.2d 83, 89 (7th Cir.1987),
 
 cert. denied,
 
 485 U.S. 967, 108 S.Ct. 1239, 99 L.Ed.2d 437 (1988);
 
 Morishita v. Morris,
 
 702 F.2d 207, 209-10 (10th Cir.1983). We find no circuit court of appeals case holding completely to the contrary.
 
 Cf. United States v. Smith,
 
 767 F.2d 521, 523 (8th Cir.1985) (holding that oral statement which did
 
 not
 
 provide meaningful review did not satisfy written statement requirement);
 
 United States v. Lacey,
 
 648 F.2d 441, 445 (5th Cir.1981) (same).
 

 As for the responsibility of the district court to recite the evidence on which it
 
 *832
 
 relied, we think its record treatment of the evidence, though not. a model for satisfaction of this due process rule, sufficiently complies so as to afford Copley the protection envisioned by the Supreme Court in
 
 Romano. See Romano,
 
 471 U.S. at 610-14, 105 S.Ct. at 2256-59. Copley relies on
 
 United States v. Stephenson,
 
 928 F.2d 728, 731 (6th Cir.1991), but we think
 
 Stephenson
 
 distinguishable. The
 
 Stephenson
 
 court, unlike the district court in. this case, did not consider the hearing transcript in connection with the oral findings. The district court’s transcribed oral statements here, when examined together with the transcript of Copley’s hearing and the record that was before the court, adequately demonstrate for us the evidence on which the trial court relied.
 
 See also United States v. Kindred,
 
 918 F.2d 485, 488 (5th Cir.1990) (affirming revocation of supervised release even though district court provided no written statement of the evidence, because the evidence was “overwhelmingly” against the releasee). Second, unlike
 
 Stephenson,
 
 here the government’s evidence stands virtually unrebutted, and the district court correctly noted that he had “heard no real evidence to the contrary.”
 

 In our view, the court’s statement also adequately expressed its reasons for revoking supervised release. Although it might have been more specific, no great leap of faith was required to understand its reasons for ordering revocation. The purpose of the hearing was to determine whether Copley had violated a specific condition of supervised release: that he not commit another federal, state, or local crime during the period of supervision. The district court found that Copley was “in violation of his condition[] of supervised release” in that he had “engaged in marijuana cultivation, which is a felony under West Virginia law and under federal law as well.” It was evident from these two findings that the court was revoking Copley’s supervised release under §■ 3583(e)(3), which allows a court to revoke supervised release “if it finds by a preponderance of the evidence that the person violated a condition of supervised release.” 18 U.S.C.A. § 3583(e)(3). It was equally clear that the condition Copley was found to have violated was the one forbidding him from committing another crime, and that the crime in this case was manufacturing marijuana, which is prohibited under federal and state law.
 
 See
 
 21 U.S.C.A. § 841(a)(1); W.Va.Code Ann. § 60A-4-401(a).
 

 We agree, however, with Copley’s argument that the district court erred in reordering supervised release after imposing a new term of incarceration. After the district court announced Copley’s sentence and after the parties filed their briefs to this Court, we decided
 
 United States v. Cooper,
 
 962 F.2d 339 (4th Cir.1992). In
 
 Cooper
 
 we held that a district court has no statutory authority to reimpose, after revoking, a term of supervised release.
 
 Id.
 
 at 339.
 

 We therefore reverse and vacate that portion of the district court’s judgment reimposing supervised release. In all other respects the judgment of the district court is affirmed.
 

 AFFIRMED IN PART; REVERSED IN PART,
 

 *
 

 Supervised release and probation differ only in that the former follows a prison term and the latter is in lieu of a prison term.
 
 See United States v. Stephenson,
 
 928 F.2d 728, 730 (6th Cir. 1991).