64 F.3d 660
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ernest Lee GRAHAM, Defendant-Appellant.
 No. 94-5922.
 United States Court of Appeals, Fourth Circuit.
 Aug. 17, 1995.
 
 Martha Diane Jenison, Charlotte, NC, for Appellant.
 Kenneth Michael Smith, Asst. U.S. Atty. (Mark T. Calloway, U.S. Atty., on the brief), Charlotte, NC, for appellee.
 Before RUSSELL, WIDENER and HALL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Ernest Graham appeals the order revoking his term of supervised release and imposing a 24-month term of imprisonment. We affirm.
 
 
 2
 * On July 28, 1989, Graham pled guilty to a charge of failure to surrender for service of a sentence. See 18 U.S.C. Sec. 3146(a)(2). For the failure-to-surrender conviction, he was sentenced to 24 months imprisonment and 24 months supervised release.[1] The terms of Graham's supervised release included the mandatory prohibition against violating any state or federal laws. See 18 U.S.C. Sec. 3583(d).
 
 
 3
 Graham began his term of supervised release on September 4, 1992. Three weeks later, he was arrested for drunk driving. He pled guilty to DWI in state court on December 14, 1992, and received a 60-day suspended sentence.
 
 
 4
 On April 12, 1994, Graham was arrested for beating his estranged wife with a "large wooden object." On July 12, 1994, he was tried in the Gaston County (N.C.) District Court and convicted of assault with a deadly weapon, a felony, and was sentenced to six months in prison. He immediately appealed to the Superior Court, where he had a right to a trial de novo,[2] and was released on bond.
 
 
 5
 Three weeks later, on August 3, 1994, federal probation officer Terri Bess filed a petition with the federal district court for revocation of supervised release on the basis of the DWI and assault convictions. On October 19, 1994, the state Superior Court dismissed the assault charge against Graham because his wife failed to appear at trial.
 
 
 6
 A revocation hearing was held in federal district court on November 29, 1994. The parties stipulated to the DWI conviction. However, because Graham's wife was again not available to testify, the government offered to drop the assault violation. After inquiring about the difference in possible prison terms between a revocation based on the DWI conviction alone and one based on both violations,[3] the district court asked Bess to testify.
 
 
 7
 Without objection, Bess testified that Mrs. Graham had told her that she had intended to testify against her husband at the Superior Court trial, but was unable to do so because she had a child in the hospital at the time. Bess also testified about several other charges involving Graham since his supervised release began. A charge that he pointed a gun at another was still outstanding, although "several drug offenses" had been dismissed by the Superior Court.
 
 
 8
 Graham denied that he had assaulted his wife. According to him, a woman had approached him and asked for $80 that she said his wife owed her for drugs. Graham refused to give the stranger anything. The next day, his wife called and asked him to come to her home. The police arrived just after he did and arrested him on his wife's complaint. Mrs. Graham had indeed been beaten. Graham said that his ife later told his sister that the beating had been carried out by the drug woman and that she (Mrs. Graham) would do everything she could to put her husband back in prison. On cross-examination, Graham admitted that he had been arrested a number of times for assaults on females.[4]
 
 
 9
 The court, after noting that the only factfinder to consider the assault charge--the Gaston County District Court--had found Graham guilty, determined that "the testimony of Ms. Bess indicates the crime did occur based on the testimony of his wife." The court revoked Graham's supervised release and sentenced him to the maximum 24 months in prison.[5] Graham appeals.
 
 II
 
 10
 Graham does not contend that the sentence was an improper response to the finding that he committed the assault; 24 months is clearly within the recommended range.[6] Instead, Graham contends that it was error for the district court to consider Bess's testimony without first determining whether there was good cause for the substitution of this hearsay for the live testimony of his wife and, if there was, whether the hearsay evidence was reliable. Graham also contends that the evidence was insufficient to sustain the finding that Graham committed the assault. We find no error in the consideration of Bess's testimony and, further, we hold that the evidence was sufficient.
 
 
 11
 * The government need prove a violation of the conditions of release by only a preponderance of the evidence; a criminal conviction is not necessary. See 18 U.S.C. Sec. 3583(e)(3); United States v. Copley, 978 F.2d 829, 831 (4th Cir.1992). Revocation hearings are governed by Fed.R.Crim.P. 32.1. The focus in this appeal is on Rule 32.1(a)(2)(D), which requires that the defendant be given "the right to question adverse witnesses."
 
 
 12
 In Morrissey v. Brewer, 408 U.S. 471, 488-89 (1972), the Supreme Court held that the minimum requirements of due process for parole revocation hearings include "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." Graham argues that Rule 32.1(a)(2)(D), which is essentially a codification of this requirement, imposes a mandatory duty on the court to balance the need for and the reliability of hearsay evidence whenever the government attempts to substitute hearsay for the live testimony of an adverse witness. See United States v. Zentgraf, 20 F.3d 906, 908-10 (8th Cir.1994) ("Morrissey requires the trial court in a revocation proceeding to balance the [defendant's] right to confront a witness against the grounds asserted by the government for not allowing confrontation.") (citations and internal quotation omitted); see also United States v. Frazier, 26 F.3d 110, 114 (11th Cir.1994) (same). We turn first, then, to Graham's contention that the court committed reversible error in failing to determine whether there existed good cause for not permitting him to cross-examine his wife.
 
 B
 
 13
 Graham's first assignment of error is that the district court should have, sua sponte, conducted a balancing test of the type established in Zentgraf before admitting Bess's testimony about what Mrs. Graham had told her. Because of Graham's failure to assert his confrontation rights or object to the admission of Bess's hearsay, the district court's failure to explicitly find good cause for not allowing confrontation is reviewable for plain error. See United States v. Olano, 113 S.Ct. 1770 (1993). We may correct error that is both plain and prejudicial if such error "substantially affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. at 1779. Even if we assume that the court committed plain error in failing to make a specific finding that there was good cause for not allowing confrontation, we decline to exercise our discretionary power to correct such an error because we find, as explained in Section IIC, infra, that the hearsay in this case was sufficiently reliable.[7] See United States v. Alaniz-Alaniz, 38 F.3d 788, 791 (5th Cir.1994) (applying plain error analysis to district court's failure to conduct balancing test where defendant failed to object to admission of hearsay evidence, but declining to exercise discretion to grant relief "even assuming" plain error had been committed); but see Belk v. Purkett, 15 F.3d 803, 813-14 (8th Cir.1994) (defendant's request to confront adverse witness is irrelevant because burden is on state to produce the witness or show good cause for not doing so).
 
 C
 
 14
 Graham also contends that, aside from the question of his confrontation rights, Bess's testimony relative to the alleged assault should not have been admitted because it was insufficiently reliable or probative. Again, because Bess testified without objection from the defense, our review of the court's decision to admit and consider this evidence is for plain error. See Olano, supra. We find no error in this regard.
 
 
 15
 The Rules of Evidence do not apply at revocation hearings, Fed.R.Evid. 1101(d)(3), and the due process constraints on the admission of evidence in revocation hearings are certainly no greater than those in effect at criminal trials. See Zentgraf, 20 F.3d at 909. Moreover, "the [revocation] process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." Morrissey, 408 U.S. at 488-89 (quoted in the advisory committee's note to Rule 32.1). Thus, the hearsay nature of the evidence does not render its admission error. Instead, our inquiry focuses on whether the evidence was sufficiently reliable. Upon considering the hearsay within the context of the entire hearing, we conclude that it was indeed reliable.
 
 
 16
 The question was not whether Mrs. Graham was beaten--she clearly was--but, rather, who did it, Graham or the mysterious drug woman. Bess's account of Mrs. Graham's story is corroborated by undisputed facts. Graham has an apparent penchant for hitting women, and his marital difficulties were conceded. He was arrested at his wife's home soon after the assault, and, most tellingly, he was convicted of the assault in state court by the only factfinder to consider both his and his wife's testimony.
 
 
 17
 The district court's findings of fact did not rely solely on hearsay testimony and the assault conviction. The court was able to observe Graham's demeanor. Moreover, Graham's version of events, while not incredible, did not hold up particularly well. For instance, though he said he had witnesses both to the phone call from his wife asking him to come over and to his arrival at her house, no witnesses were called on his behalf. The opportunity to observe Graham no doubt acted to reinforce the court's belief in the truth of Mrs. Graham's account of what happened.
 
 III
 
 18
 It follows that if Bess's testimony was reliable, then that evidence is sufficient to support the factual finding that Graham was guilty of the assault on his wife.[8] Therefore, the district court did not abuse its discretion in revoking supervised release on the basis of the assault.
 
 IV
 
 19
 Graham's final assignment of error is that the district court failed to provide a written statement of the reasons for the revocation decision. See Morrissey, 408 U.S. at 488-89 (the minimum requirements of due process include "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole"). This requirement of a "written statement" can be met by a transcript of an oral finding "when the transcript and record compiled before the trial judge enable the reviewing court to determine the basis of the trial court's decision." Copley, 978 F.2d at 831. In the case before us, the court's recitation of the evidence that it relied upon to find a violation may not be a "model for satisfaction of this due process rule," id. at 832, but it is sufficient.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 Graham was convicted of possession of a stolen check on January 31, 1989, and was sentenced to two years in prison. The sentence for failure to surrender for the service of that sentence was to be served consecutively to the stolen check sentence. See 18 U.S.C. Sec. 3146(b)(2)
 
 
 [2]
 See N.C. GEN. STAT. Sec. 15A-1431(b) (1994)
 
 
 [3]
 Bess informed the court that if the DWI were the only violation, the revocation sentence would be in the 8-14 month range, whereas the assault violation would yield a 18-24 month range. These are the ranges recommended by the Sentencing Commission for these violations by someone with Graham's criminal history. See USSG Ch.7, Pt.B, p.s. (Nov.1994)
 
 
 [4]
 Graham also admitted that he had been at the courthouse the previous day--when the revocation hearing had been originally scheduled--but that he had left without entering the courtroom or even telling his lawyer he was present. Mrs. Graham had then been present and was prepared to testify
 
 
 [5]
 The underlying offense of conviction, failure to surrender, is a class D felony. See 18 U.S.C. Sec. 3559(a)(4). Twenty-four months is the maximum allowable sentence upon revocation of supervised release, where that release was granted as part of a class D felony sentence. See 18 U.S.C. Sec. 3583(e)(3)
 
 
 [6]
 See note 3, supra
 
 
 [7]
 In each of the cases cited by Graham for the proposition that it is error for a court to admit hearsay without conducting the balancing test, the hearsay testimony was admitted over the objection of the defendant. See United States v. O'Meara, 33 F.3d 20 (8th Cir.1994) (per curiam); Frazier, 26 F.3d at 112 (holding that error in failing to conduct balancing test was harmless); Zentgraf, 20 F.3d at 908
 
 
 [8]
 Graham cites two cases in which parole revocations were overturned by the appeals court on the basis of insufficient evidence. In Taylor v. United States Parole Commission, 734 F.2d 1152 (6th Cir.1984), the government's only evidence was a letter from a parole officer that recounted a police investigative report into alleged criminal conduct by the parolee. In United States v. Stephenson, 928 F.2d 728 (6th Cir.1991), an opinion on which Graham places particularly great reliance, the probation officer merely testified that the defendant had been arrested for assault; there was no indication that the officer had spoken to, or even whether injuries were sustained by, the complaining witness. Stephenson testified that the alleged assault amounted to little more than "some pushing." Id. at 731. In vacating the revocation on the basis of insufficient reliable evidence, the appeals court noted that the probation officer's testimony contained very few details and that no other evidence, such as affidavits from the victim of the alleged assault, was adduced. Id. at 732. Here, in contrast, the district court had a stronger evidentiary foundation for its decision. Bess's testimony, for example, was the functional equivalent of an affidavit from the victim