**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                        No. 97-4530

GREGORY JEROME WOODARD,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, District Judge.
(CR-96-8-F)

Argued: April 10, 1998

Decided: May 5, 1998

Before MOTZ, Circuit Judge, STAMP,
Chief United States District Judge for the Northern District of
West Virginia, sitting by designation, and DOUMAR,
Senior United States District Judge for the Eastern District of
Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** George Alan DuBois, Assistant Federal Public Defender,
Raleigh, North Carolina, for Appellant. Scott L. Wilkinson, Assistant
United States Attorney, Raleigh, North Carolina, for Appellee. **ON
BRIEF:** William Arthur Webb, Federal Public Defender, Raleigh,

North Carolina, for Appellant. Janice McKenzie Cole, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Gregory Woodard appeals from an order of the district court revoking his term of supervised release and imposing in its place a twenty-four month term of imprisonment. Finding no error, we affirm.

I.

On October 22, 1996, Woodard pled guilty to conspiracy to commit credit card fraud in violation of 18 U.S.C.A.§ 371 (West 1966 & Supp. 1998) and § 1029(a)(2) (West Supp. 1998). The district court sentenced Woodard to one month imprisonment and a three-year term of supervised release. Among the conditions of his release, the court ordered that Woodard "shall undergo placement in a community corrections center for a period of 5 months as arranged by the probation office and shall abide by the conditions of that program during said placement." (Emphasis added). After serving his short term of imprisonment, on January 28, 1997, Woodard was released to the Community Corrections Facility (CCF) in Raleigh, North Carolina.

Four months later, on May 22, 1997, the CCF informed the probation office that it had terminated Woodard from the program, citing "violations for failure to maintain house cleanliness and insolence toward staff members," and "a serious and repeated violation of a condition of a community program, namely that [Woodard] signed out of the [CCF] facility on the pretense of employment but did not work and was whereabouts unknown during those periods." Based on

2

this notice and related incident reports, the probation office filed a motion to revoke Woodard's supervised release for "[f]ailure to abide by conditions of the Community Corrections Center."

The government moved to detain Woodard pending a revocation hearing. A magistrate judge held a hearing to determine whether probable cause existed for revocation, and to rule on the government's motion for detention. At this hearing, the government presented evidence that Woodard repeatedly signed out for work, but in fact did not work during many of those hours. Indeed, the evidence showed that Woodard contacted his employer during those times to check "whether the [CCF] staff had contacted the store about his presence there," and that one of the incidents occurred after Woodard had been counseled at a special meeting with CCF staff and his probation officer to comply with CCF regulations or risk revocation of his release. The evidence also showed that Woodard failed to comply with house cleanliness regulations, failed to attend required substance abuse counseling, and became insolent and profane with CCF staff when instructed about his responsibilities. On this evidence, and considering Woodard's past failure to comply with release plans, the magistrate judge granted the motion to detain.

A formal revocation hearing took place on June 19 before the district court, at which Woodard denied the violations. He contended that the unaccounted time reflected long delays on public transportation or improperly recorded time sheets. The government presented the evidence against Woodard through the testimony of Woodard's probation officer and the director of the CCF. Again the witnesses detailed Woodard's repeated falsification of work reports and attempts to have his employer lie on his behalf, failure to attend mandatory substance abuse counseling, failure to perform housecleaning chores, and abusive attitude toward CCF staff.

At the conclusion of the hearing, the court found that Woodard violated CCF's rules and regulations, that he had been a disciplinary problem at the Center, and that he "violated the terms and conditions of the judgment by failure to abide by the conditions and terms of the community correction center." The judge noted that, based on Woodard's Class C release violation and Category I criminal history, the appropriate sentence range would be three to nine months. See U. S.

3

Sentencing Guidelines Manual § 7B1.4(a) (1997) (U.S.S.G.) (table detailing ranges of imprisonment to be imposed upon revocation of supervised release or probation).[1] However, because this was Woodard's fourth appearance before the court for violations of court-imposed conditions, and because Woodard had received"every break that this court could give him," the district judge decided to revoke the supervised release and to exceed the applicable range, imposing a twenty-four month sentence.

II.

The single issue presented for review in this case is whether the district court adequately advised Woodard of the reasons for revoking his supervised release and adequately identified the evidence relied upon to reach that decision.[2]

Woodard argues that, in addition to finding that the he did not comply with the rules and regulations of the CCF (the violation charged in the revocation motion), the court had to identify with specificity the particular rule(s) violated and the evidence relied upon in so finding. According to Woodard, the district court violated his due process

_____

[1] Upon revocation of supervised release, the ranges appearing in the revocation table are merely advisory policy statements, not guidelines that bind a district court. See United States v. Denard, 24 F.3d 599, 602 (4th Cir. 1994); see also U.S.S.G. Ch. 7, Pt. A, intro. comment. 3(a) (discussing difference between guidelines and policy statements). Moreover, a decision to exceed the applicable range in the context of revoking supervised release is not considered a "departure," and, thus, the procedural safeguards governing departure are unwarranted. See Denard, 24 F.3d at 602.

[2] Woodard briefly contends that he was not fully informed of the charged violations prior to the revocation hearing, and was "taken by surprise" at the hearing, particularly by evidence of one falsification incident that occurred in early February. See Brief of Appellant at 13-14. This contention is meritless. Woodard admits he received copies of the revocation motion and the CCF termination notice. Id. at 13. Moreover, he and his attorney were present at the probable cause and detention hearing, where this evidence was presented to the court by testimony from Woodard's probation officer, whom Woodard's original attorney cross-examined. See also Brief of United States at 15-16.

rights because the court "provided absolutely no explanation in support of its decision to revoke [his] supervised release and utterly failed to identify its reasons or evidentiary basis for doing so." Brief of Appellant at 9. He maintains that "[b]ecause the court did not inform [him] which of the violations it found had occurred and because it failed to identify the evidence it had relied upon in making this determination, the court effectively precluded meaningful appellate review of its actions." Id. He contends that such a particularized statement is "critically important" because the sentence imposed for violation of supervised release must be reasonable, which in turn depends on which alleged violations the court found. Id.

In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court set forth the due process requirements for revocation of parole. Because "revocation of parole is not part of a criminal prosecution," the "full panoply of rights due a defendant in such a proceeding does not apply." Id. at 480. However, some process is due. Within a reasonable time after the preliminary hearing, the defendant is entitled to a final hearing. The minimum due process requirements for this final hearing include a written statement by the factfinders as to the evidence relied on and the reasons for revocation. See Brewer, 408 U.S. at 488-89. The Supreme Court has explained that the written statement requirement purports to "insure adequate factfinding with respect to any alleged violation and provides an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence." Black v. Romano, 471 U.S. 606, 613-14 (1985).

The Brewer requirements apply to revocation of supervised release as well as revocation of parol and probation. See Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973); United States v. Copley, 978 F.2d 829, 831 (4th Cir. 1992); United States v. Copeland, 20 F.3d 412, 414 (11th Cir. 1994). Moreover, we, like many other circuits, have held that

> a transcribed oral finding can serve as a "written statement"
> for due process purposes when the transcript and record
> compiled before the trial judge enable the reviewing court
> to determine the basis of the trial court's decision.

Copley, 978 F.2d at 831; see Copeland , 20 F.3d at 414; United States v. Gilbert, 990 F.2d 916, 917-18 (6th Cir. 1993); United States v.

5

Barnhart, 980 F.2d 219, 223 n.3 (3rd Cir. 1992); United States v. Barth, 899 F.2d 199, 201-02 (2nd Cir. 1990); United States v. Yancey, 827 F.2d 83, 89 (7th Cir. 1987); Morishita v. Morris, 702 F.2d 207, 209-10 (10th Cir. 1983).

In Copley, the defendant pled guilty to a federal counterfeiting charge, for which he received a term of imprisonment plus a term of supervised release. Pursuant to 18 U.S.C.A. § 3583(d) (West Supp. 1998), the court imposed the mandatory condition that he not commit another crime during the period of supervision. The defendant was subsequently arrested on charges of cultivating marijuana, and his probation officer filed a petition to revoke supervised release on the grounds that he failed to comply with the condition of release because he "`possess[ed] marijuana, which is a violation of both Federal and state statutes.'" Copley, 978 F.2d at 830 (alteration in original). At Copley's revocation hearing, "evidence was presented concerning the cultivation of marijuana in and around a house in which Copley resided." Id. After hearing the evidence presented, the court summarily concluded:

> Based upon the evidence I have, the Court would find that there is clear and convincing evidence . . . which would support the conclusion that Mr. Copley is in violation of his condition[ ] of supervised release, and that there is every reason to believe that Mr. Copley . . . engaged in marijuana cultivation.

Id.

Copley asserted on appeal that the district court denied him due process by failing to provided a written statement of the reasons for revocation and the evidence relied upon. We held that "[t]he district court's transcribed oral statements here, when examined together with the transcript of Copley's hearing and the record that was before the court, adequately demonstrate for us the evidence on which the trial court relied." Id. at 832. We concluded that:

> In our view, the court's statement also adequately expressed its reasons for revoking supervised release. Although it might have been more specific, no great leap of faith was

6

required to understand its reasons for ordering revocation. The purpose of the hearing was to determine whether Copley had violated a specific condition of supervised release: that he not commit another federal, state, or local crime during the period of supervision. The district court found that Copley was "in violation of his condition[ ] of supervised release" in that he had "engaged in marijuana cultivation, which is a felony under West Virginia law and under federal law as well." It was evident from these two findings that the court was revoking Copley's supervised release under § 3583(e)(3), which allows a court to revoke supervised release "if it finds by a preponderance of the evidence that the person violated a condition of supervised release." 18 U.S.C.A. § 3583(e)(3). It was equally clear that the condition Copley was found to have violated was the one forbidding him from committing another crime, and that the crime in this case was manufacturing marijuana, which is prohibited under federal and state law.

Id.

We reach the same conclusion in Woodard's case. The district court's statements could have been more detailed, but they were not so lacking in specificity as to deprive us of an adequate basis for review. The relevant condition of release instructed Woodard to complete a five-month period at a community correction center and "abide by the conditions of that program." The motion for revocation alleged a single violation of release: "[f]ailure to abide by conditions of the Community Corrections Center." The district court expressly found that Woodard "violated the terms and conditions of the judgment by failure to abide by the conditions and terms of the community correction center." It is clear from this statement, and from the record and transcript of the hearing, that the court revoked Woodard's supervised release for violating the condition that he comply with the rules of the CCF.

Moreover, although perhaps not a "model for satisfaction of [ ] due process," Copley, 978 F.2d at 832, the district court's oral statements, combined with the transcript of Woodard's hearing and the record, adequately identify the evidence relied upon. The evidence produced

7

regarding falsification of time records, failure to attend mandatory substance abuse counseling, and insolence and insubordination, although it takes the form of different incidents, sufficiently demonstrated that Woodard committed a single violation of his release conditions -- i.e., that he failed to comply with the rules of the CCF. Indeed, Woodard does not bother to challenge the sufficiency of the evidence, presumably because it clearly satisfies the abuse of discretion standard we would employ. See id. at 831. Although we believe the evidence sufficient to show that Woodard's conduct in each of the incidents violated CCF rules, in our view we need not break down the evidence that far. It suffices that the evidence of Woodard's conduct, taken as a whole, shows that Woodard violated the rules and regulations of the CCF, and, thus, Woodard violated the relevant condition of his release.

United States v. Lacey, 648 F.2d 441 (5th Cir. 1981), and United States v. Smith, 767 F.2d 521 (8th Cir. 1985), are not to the contrary. In both, unlike the case at hand, the district court's oral statements were held not to provide a basis for meaningful appellate review. See Copley, 978 F.2d at 831; see also Copeland , 20 F.3d at 414-15 & n.1 (distinguishing Smith and Lacey); Barth, 899 F.2d at 201-02 (same). In Lacey, the motion for revocation alleged three distinct and unrelated probation violations, but the evidence presented was sufficient to support only two of the three alleged violations. Lacey, 648 F.2d at 443. The district court did not even state which of the three alleged violations it based revocation on. Thus, the Fifth Circuit held that the "general conclusory reasons" offered by the district court made it impossible to determine the basis of the court's revocation decision. Id. at 444-45. No such problem exists in Woodard's case, because the district court explicitly stated what condition Woodard violated and the transcript and record clearly establish the evidentiary basis for that finding.

In Smith, "no findings existed, oral or written." Copeland, 20 F.3d at 414 n.1. The district court in Smith simply stated "I revoke the probation. I'm ready to impose sentence," and issued an order stating "[t]he Court finds that defendant has violated his probation." Smith, 767 F.2d at 522. Because the district court failed to distinguish between the alternative unrelated crimes listed as grounds for the revocation decision, the Eighth Circuit was "unable to determine the

8

basis of the district court's decision to revoke probation." <u>Smith</u>, 767 F.2d at 524. Again, no such problem exists here. The evidence presented pertains to a single ground for revocation, namely, non-compliance with the conditions of the CCF facility, and amply supports revocation based on that violation.

III.

In sum, the transcribed oral findings of the district court satisfied the written statement requirement of <u>Brewer</u>, and the transcript and record of the proceedings provided an adequate basis for appellate review of the reason for revocation and the evidence relied on. Given Woodard's conduct at the CCF and his past failures to comply with release conditions, the sentence imposed upon revocation was not unreasonable. <u>See United States v. Pelensky</u>, 129 F.3d 63, 69 (2nd Cir. 1997) (sentence imposed upon revocation of supervised release must be reasonable). The order of the district court revoking Woodard's term of supervised release and imposing a twenty-four month term of imprisonment is

<u>AFFIRMED</u>.