UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-5226

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RODNEY LEE RAMEY,

Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Huntington.  Robert C. Chambers, District Judge.  (3:05-cr-00067)

Argued:  December 7, 2007       Decided:  February 15, 2008

Before WILKINSON and SHEDD, Circuit Judges, and John Preston BAILEY, United States District Judge for the Northern District of West Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Jane Moran, Williamson, West Virginia, for Appellant. Louise Anna Forbes, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee. **ON BRIEF:** Charles T. Miller, United States Attorney, Stephanie L. Haines, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Rodney Lee Ramey (Ramey) appeals the district court's order revoking his term of supervised release and sentencing him to ten months' imprisonment. Ramey contends that the district court abused its discretion by revoking his term of supervised release because the court improperly relied upon uncorroborated hearsay testimony that violated his Sixth Amendment right to confront adverse witnesses. Ramey further contends that his Sixth Amendment rights were violated by the admission into evidence of statements he made to an investigator without the presence of counsel. Finding that the evidence was sufficiently reliable to authorize the revocation of supervised release, we affirm.

In May 2005, Ramey pled guilty to one count of aiding and abetting the distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) (2000) and 18 U.S.C. § 2 (2000), and was sentenced to six months' imprisonment, followed by a three-year term of supervised release. Ramey began serving his term of supervised release on February 3, 2006. In September 2006, Ramey's probation officer filed a petition with the district court, asking the court to revoke Ramey's supervised release because he submitted a false monthly report and failed to notify his probation officer of his change of address. In October 2006, Ramey's probation officer filed an amendment to the earlier petition, alleging that Ramey had

left the judicial district without permission and used a stolen credit card.

At the revocation hearing, held November 13, 2006, Ramey's probation officer testified that Ramey, his girlfriend, and their child had been living with Ramey's father, Richard T. Ramey (Richard). The officer testified that on August 28, 2006, she received a telephone call from Richard reporting that Ramey was no longer living at the residence. When the officer received Ramey's monthly report for September, Ramey indicated that he, his girlfriend, and their daughter were still residing with Richard. The probation officer again spoke with Richard, who confirmed that Ramey had not been residing in his home since August 25, 2006. Richard further explained that Ramey had been asked to leave his home because he had stolen Richard's credit card, activated the card, and made $5,000 in withdrawals and purchases.

Postal Inspector Speck also testified at the revocation hearing concerning his investigation of the credit card allegations. He testified that, according to the credit card company, the card was jointly issued to Richard and the defendant's brother, Richard Ramey II. The card was mailed to defendant's father at his residence on August 7, 2006, and was activated on August 16 by someone claiming to be Richard who was calling from Richard's telephone number. Thereafter, the card was used on

multiple occasions in Eleanor, West Virginia and Proctorville, Ohio.

Inspector Speck also presented video images from a surveillance camera at a Proctorville, Ohio bank where a cash withdrawal was made. The surveillance video depicted both a male and female present when the card was used. Inspector Speck obtained photographs of Ramey, compared the images, and found them to be "consistent." Inspector Speck also reported that Richard filed a police report with the Putnam County Sheriff's Office on August 31, 2006.

Inspector Speck interviewed Ramey on October 6, 2006, concerning the credit card. Ramey admitted that he was residing at his father's home at the time of the credit card usage, but that he had been asked to leave when Richard accused him and his girlfriend of stealing the credit card.

Inspector Speck also interviewed Ramey's girlfriend, who admitted that she had used the credit card, but that Richard had given it to her to dissuade her from reporting sexual advances made by Richard. In the same interview, she contrarily stated that using the credit card was "stupid" and that she should not have done it. The girlfriend admitted that she was shown in the surveillance video using the credit card, but that she did not know the identity of the male in the video. She told Inspector Speck that she and her cousin had driven Ramey's car to the bank, but

4

that Ramey was not with them.  Rather, she claimed the male was an unnamed and unknown individual that she and her cousin had "picked up."

Ramey also testified at the revocation hearing, confirming that his father had asked his girlfriend and their daughter to leave the home on August 25, 2006, but claiming that he did not leave until September 9.  Ramey stated that it was simply a "mistake" when he indicated on his monthly report that his girlfriend and daughter were still residing in the home on September 4, 2006.  Ramey denied ever seeing the credit card.

At the close of the hearing, the district court found that Ramey had violated the terms of his supervised release, revoked that release, and sentenced him to ten months' incarceration.

This court reviews a district court's decision to revoke a defendant's supervised release for an abuse of discretion.  United States v. Copley, 978 F.2d 829, 831 (4th Cir. 1992).  A district court need only find a violation of a condition of supervised release by a preponderance of the evidence.  18 U.S.C. § 3583(e)(3) (2000).  We do not review the district court's assessment of witness credibility.  See United States v. Stevenson, 396 F.3d 538, 542-43 (4th Cir.), cert. denied, 544 U.S. 1067 (2005).

Ramey contends that he was denied his right to counsel when he was questioned by Inspector Speck.  The right to counsel, however, attaches only after the commencement of formal charges against a

5

defendant. See Moran v. Burbine, 475 U.S. 412, 431 (1986). This right is "offense specific," and even if a defendant has a right to counsel for one offense, this right does not automatically attach to other offenses for which he has yet to be charged. See McNeil v. Wisconsin, 501 U.S. 171, 175 (1991); see also Texas v. Cobb, 532 U.S. 162, 172-73 (2001) (right only includes uncharged offenses that constitute "same offense" as previously charged offense). In this case, Inspector Speck spoke to Ramey about the credit card theft on October 6, 2006, which was prior to the filing of the amended violation report on October 17, 2006. While the original violation report was filed on September 21, 2006, none of the reported violations in that report were based on the alleged credit card theft. Therefore, any questioning by Inspector Speck was related to an uncharged offense for which the right to counsel had not yet attached.

Ramey next objects to the district court's reliance on hearsay evidence, contending that the evidence was insufficient and that his right to confront his accusers was violated. Supervised release revocation hearings are informal proceedings in which the rules of evidence need not be strictly observed. Fed. R. Evid. 1101(d)(3); United States v. McCallum, 677 F.2d 1024, 1026 (4th Cir. 1982); see also United States v. Cates, 402 F.2d 473, 474 (4th Cir. 1968). Thus, the hearsay nature of evidence does not render its admission error. Instead, the inquiry focuses on whether the

6

evidence was sufficiently reliable. <u>United States v. McCallum</u>, <u>supra</u> at 1026.

While the Federal Rules of Evidence regarding hearsay do not apply at a supervised release revocation hearing, a defendant retains the right to "question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(C); <u>See also</u> <u>Morrissev v. Brewer</u>, 408 U.S. 471, 489 (1972) (minimum requirements of due process at revocation hearing include the right to confront and cross-examine adverse witnesses unless there is good cause for not allowing confrontation). The 2002 Advisory Notes to Fed. R. Crim. P. 32.1 explain that this provision "recognizes that the court should apply a balancing test at the hearing itself when considering the releasee's asserted right to cross-examine adverse witnesses."

At the hearing, Ramey timely interposed a hearsay objection, claiming that the Government's presentation of the case through the testimony of the probation officer and Inspector Speck deprived him of the opportunity to confront all adverse witnesses. The district court overruled the objection, noting that the rules of evidence relating to hearsay did not apply to revocation hearings. In making its determination, the district court did not inquire as to the availability of the witnesses or apply any balancing test pursuant to Fed. R. Crim. P. 32.1(b)(2)(C). The probation officer

was permitted to testify as to her telephone conversations with Ramey's father, while Inspector Speck testified regarding the statements and admissions made by Ramey's girlfriend. Neither was called to testify by either party.

From the record, it is clear that the Government could not have called Ramey's father to testify because he was deceased at the time of the hearing. However, there was no indication as to why Ramey's girlfriend was not called. Despite this omission, it does not appear that Rule 32.1(b)(2)(C) would have even applied to her testimony, as her statements were not directly adverse to Ramey's claim of innocence. The girlfriend's testimony did not implicate Ramey as a guilty party, as she told Inspector Speck that Ramey had not gone to the ATM with her and that he had not stolen the credit card. Because her testimony, if believed, would not have served to implicate Ramey, Rule 32.l(b)(2)(C) is not applicable, as the rule only relates to adverse witnesses.[*] Because Ramey's father could not have been present and Ramey's girlfriend did not qualify as an adverse witness, Rule 32.l(b)(2)(C) was not applicable to the testimony regarding these conversations.

---

[*]It should be noted that, in the end, the girlfriend's testimony actually hurt Ramey's case, as the district court relied on her admission that she was at the ATM as circumstantial evidence that Ramey was the other individual present. However, the mere fact that her testimony was not beneficial to Ramey's case does not render her an adverse witness.

8

While Rule 32.1(b)(2)(C) does not apply in this case, the question remains as to whether the hearsay testimony that was presented by the probation officer and Postal Inspector Speck was reliable.  See McCallum, 677 F.2d at 1026.  Hearsay testimony may be shown to be reliable by extrinsic corroborating evidence or other indicia showing the statement to be inherently reliable. See United States v. Scheele, 231 F.3d 492, 500, n.5 (9th Cir. 2000).  A court may not admit unsubstantiated or unreliable hearsay as substantive evidence at revocation hearings.  Crawford v. Jackson, 323 F.3d 123, 128 (D.C. Cir. 2003).

In this case, there was sufficient extrinsic evidence to substantiate the hearsay testimony.  Richard Ramey's report that Ramey was expelled from his home on August 25 due to his theft of the credit card is corroborated by his report of the theft to the credit card company, his report to the Putnam County Sheriff's Office, the girlfriend's admission that she used the credit card, and Ramey's admission that he had been asked to leave the home on August 25, 2006, due to the accusation of the credit card theft.

As for the statements made by Ramey's girlfriend, who allegedly admitted to Inspector Speck that she was one of the individuals shown on the ATM images using Richard's credit card, there is little extrinsic evidence to substantiate her statements. Her hearsay statements may be viewed as self-exculpatory, as she contended that her use of the credit card was authorized by Richard

9

to prevent her from telling anyone about his alleged sexual advances. However, her statement that she was one of the individuals shown on the ATM images was self-inculpatory, as it indicates that she was, at the very least, present at the ATM when the credit card was being used. In light of the fact that her admission was made to Inspector Speck in the course of his investigation into whether the card had been stolen and illegally used, it was reasonable for the district court to conclude that such a statement would be inherently reliable as an admission against interest. Fed. R. Evid. 804(b)(3); see also Williamson v. United States, 512 U.S. 594, 600 (1994). While the girlfriend's statements, when taken as a whole, are exculpatory, the district court could accept the inculpatory aspects of her statements to Inspector Speck while rejecting her explanation as to whom she was at the ATM with and why they were using Richard's credit card. Based in part on her admission that she was present at the ATM, it was within the district court's discretion to infer that the other individual present on the ATM security video was, in fact, Ramey, and that he was, therefore, in violation of the conditions of his supervised release as charged in the amended violation petition filed in October 2006.

Accordingly, we affirm the revocation of Rodney Lee Ramey's supervised release.

AFFIRMED

10