**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Clyde M. COOPER, Jr., Defendant–**
**Appellant.**

**No. 91–5455.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 6, 1992.

Decided April 24, 1992.

Leonard A. Kaplan, Asst. Federal Public Defender, Charleston, W.. Va., argued (Hunt Charach, Federal Public Defender, on brief), for defendant-appellant.

Michael M. Fisher, Asst. U.S. Atty., Charleston, W. Va., argued (Michael W. Carey, U.S. Atty., on brief), for plaintiff-appellee.

Before RUSSELL and SPROUSE, Circuit Judges, and BUTZNER, Senior Circuit Judge.

## OPINION

SPROUSE, Circuit Judge:

Clyde Cooper appeals a district court order that revoked his supervised release, sentenced him to a period of incarceration, and reimposed another term of supervised release. Because we conclude that the district court is without statutory authority to reimpose, after revoking, a term of supervised release, we reverse.

**10.** The motion of Stacy Apple to file, pro se, a supplemental reply brief, which is effectively a motion to remand, is denied.

## I

In August of 1990, Cooper pled guilty to selling a half-ounce of cocaine in violation of 21 U.S.C. § 841(a)(1). The district court sentenced him to a five month term of incarceration and a five year term of supervised release. One of the conditions of the supervised release was that the first five months of its term be served in home confinement.[1]

Cooper served five months in a Virginia maximum security prison without incident. During the first phase of his supervised release, however, he violated one of the conditions of his home detention by seeing his girlfriend, a convicted felon. At the probation revocation hearing, Cooper admitted two of the five alleged violations. The district court revoked his supervised release and sentenced him to two months of intermittent confinement in a jail facility, to be followed by four and a half years of supervised release. In his appeal, Cooper argues that the language of 18 U.S.C. § 3583(e)(3), which authorizes revocation of supervised release, does not authorize a court to reimpose a term of supervised release after revoking it.

## II

Sections 3581 to 3586 of title 18 relate to sentencing generally. Section 3583, the provision governing supervised release, authorizes a court to impose a term of supervised release after imprisonment. The statute guides courts who are considering a sentence of supervised release by describing the factors to be considered when imposing it. It also describes conditions the court may impose to accompany a term of supervised release. Section 3583(e), which is at issue here, lists the four options a trial court retains once a term of supervised release has been imposed. Depending on the defendant's conduct during supervised release, the court may:

(1) terminate a term of supervised release and discharge the person released . . .;

(2) extend a term of supervised release . . . and may modify, reduce, or enlarge the conditions of supervised release . . .;

(3) revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release . . .; *or*

(4) order the person to remain at his place of residence. . . .

18 U.S.C. § 3583(e) (emphasis added).

In reviewing the options granted to a trial court by section 3583(e)(3), two of our sister circuits have determined that a trial court, upon revoking a previously imposed term of supervised release, has no authority to impose another term of supervised release but may only order reincarceration. *See United States v. Behnezhad,* 907 F.2d 896 (9th Cir.1990); *United States v. Holmes,* 954 F.2d 270 (5th Cir.1992).[2] The Tenth Circuit Court of Appeals, in *United States v. Boling,* 947 F.2d 1461 (10th Cir. 1991), reached an opposite conclusion. In the case we consider, appellant Cooper relies on *Behnezhad* and *Holmes,* arguing that the court was without statutory authority to reimpose supervised release.[3]

1. The initial sentence included a five month term in a community treatment center. After the local treatment center rejected Cooper's placement the court substituted the period of home detention.

2. The Third Circuit, albeit in dicta, has indicated that it also construes the statute to make "no provision for additional post-release supervision." *See United States v. Gozlon–Peretz,* 894 F.2d 1402, 1405 n. 5, *amended by* 910 F.2d 1152 (3d Cir.1990), *aff'd,* —— U.S. ——, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991).

3. Cooper also contends that the court erred when it revoked the supervised release in the first instance. He argues that his term of supervised release, i.e. the term of home detention, was actually a term of incarceration, and therefore, could not be revoked. We find no merit in this contention. Cooper had completed serving the term of home detention when, on December 2, 1991, the court revoked the term of supervised release. The court was well within its authority to revoke the remaining period of supervised release.

Cooper also raises notice and due process claims regarding the reimposition of supervised release. It is unnecessary to reach those issues.

## III

The Ninth Circuit in *Behnezhad* reversed the trial court's resentencing of Ahmad Shayesteh (a.k.a. Behrooz Behnezhad) to a term of imprisonment plus supervised release after his initial term of supervised release had been revoked. Shayesteh, who had been convicted of mail fraud, was resentenced after he violated one of the conditions of his supervised release. The trial court revoked the remaining term of supervised release and imposed a ten month term of imprisonment to be followed by a twenty-four month term of supervised release. *Behnezhad*, 907 F.2d at 897.

In reversing the district court, the Ninth Circuit in *Behnezhad* relied primarily on the plain language of section 3583(e) for its holding that a trial court could not, after a section 3583(e)(3) revocation, reimpose supervised release but was limited to reimposing incarceration. The Ninth Circuit was particularly impressed with the disjunctive structure of section 3583(e)'s four subsections and found nothing in the congressional history relating to the statute that diminished the natural meaning of "or." The court stated:

> The government argues that it would be logical for a court to be able to revoke a term of supervised release, impose a term of incarceration and then impose another term of supervised release. The government is correct since it is rational to believe that a person who has violated a condition of supervised release may only need a short reminder that incarceration is unpleasant but may still need supervised release in order to refrain from further criminal activities. However, Congress has enacted an unambiguous statute that does not provide courts with that option. We would exceed our authority were we to judicially rewrite that legislation.

*Behnezhad*, 907 F.2d at 899.

The Fifth Circuit considered a similar fact pattern in *Holmes* and agreed that the disjunctive structure of the statute governed the disposition of the issue. In its reversal of the reimposition of supervised release in *Holmes*, the Fifth Circuit also noted:

> In reaching this conclusion, we rely solely on the plain meaning of the words of the statute, our first and best resort. Section 3583(e) authorizes the district court to "revoke" a term of supervised release. "Revoke" generally means to cancel or rescind. Once a term of supervised release has been revoked under section 3583(e)(3), there is nothing left to extend, modify, reduce, or enlarge under section 3583(e)(2). The term of release no longer exists. Thus regardless of whether the options available under section 3583(e) could otherwise be used together, or in succession, the revocation and extension options are by their very nature mutually exclusive.

*Holmes*, 954 F.2d at 272.

We agree with the reasoning of *Behnezhad* and *Holmes*. The authority of a court in the federal system to sentence is based solely on statute. *See United States v. Cohen*, 617 F.2d 56, 59 (4th Cir.1980), *cert. denied*, 449 U.S. 845, 101 S.Ct. 130, 66 L.Ed.2d 55 (1980). Accordingly, a court's power is limited to what is granted by the statute. Section 3583 is unambiguously written in the disjunctive, presenting the court with four discrete choices when it elects to modify or revoke a term of supervised release. We are bound, as were the other circuit courts, to interpret a statute written in the disjunctive as setting out separate and distinct alternatives. *See United States v. Snider*, 502 F.2d 645, 655 (4th Cir.1974) (interpreting tax code to avoid the judicial rewriting of "or" as "and"). In addition, we find persuasive the reasoning of the Fifth Circuit, that, because it is logically impossible to extend a term of supervised release after it has been revoked, a court may not combine the alternatives within section 3583(e).

The government relies on the Tenth Circuit's decision in *Boling* which held that a sentencing court may reimpose supervised release after reincarceration. Although the court in *Boling* recognized that section 3583(e) was written in the disjunctive, it found legislation proposed to overrule *Beh-*

*nezhad* probative of Congressional intent.[4] The Tenth Circuit also found support for its decision in the sentencing guidelines addressing supervised release that were adopted after *Behnezhad* was decided. We find neither reason persuasive.

Even if we were not constrained by the rule that "unenacted legislation has no interpretative value," *Holmes*, 954 F.2d at 272, when language is clear on its face, as is the language we review, it is unnecessary to rely on other interpretative aids. *See Allstate Ins. Co. v. Skeeters*, 846 F.2d 932, 935 (4th Cir.1988); *In re Forfeiture Hearing ex rel. Caplin & Drysdale Chartered*, 837 F.2d 637, 641 (4th Cir.1988), *aff'd*, 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989).

■ Likewise misplaced is the government's reliance on the sentencing guideline which allows a court to reimpose a term of supervised release. *See* U.S.S.G. § 7B1.3(g)(2), p.s. The Guidelines, of course, cannot confer greater authority than the statute under which they were formulated. Guideline section 7B1.3, therefore, is limited by the language and the judicial interpretation of section 3583. The Sentencing Commission itself recognized the limitation placed on the Guideline by the *Behnezhad* decision, *see* U.S.S.G. § 7B1.3, comment. (n.3), and qualified a court's authority to reimpose supervised release with the phrase, "to the extent permitted by law." U.S.S.G. § 7B1.3(g)(2) p.s. For that matter, the language of the Guidelines at issue is in the form of a policy statement issued in order "to provide guidance while allowing for the identification of any substantive or procedural issues that require further review." U.S.S.G. ch. 7, Pt. A1, *see also* U.S.S.G. ch. 7, Pt. A3(a).[5]

Two of the circuit courts that have written on this issue recognize, as we do, that a plain reading of the statute limits a court's flexibility. *See Boling*, 947 F.2d at 1463;

*Behnezhad*, 907 F.2d at 899. We believe that the interests of the public as well as that of individual defendants would be better served by flexible sentencing rules. As the court in *Behnezhad* pointed out, however, Congress has provided courts with flexible options when it believes they are warranted. *See Behnezhad*, 907 F.2d at 899 (discussing 18 U.S.C. § 3565(a)(2) which authorizes sentencing options following violations of probation). Thus, we must await congressional action, if any, for the addition of flexibility to the provisions of section 3583(e)(3).

The judgment of the district court is therefore reversed and remanded for resentencing in conformity with the views expressed herein.

REVERSED AND REMANDED.

---

**4.** The Biden–Thurmond Violent Crime Control Act of 1991 sought among other provisions to amend section 3583 to authorize a court to include a requirement that the defendant be placed on a term of supervised release after imprisonment. 137 Cong.Rec. S10021 (daily ed. July 15, 1991). The bill was not enacted.

**5.** Guideline section 7B1.3, effective November 1, 1990, replaced an earlier, less comprehensive formulation of the Guideline regarding revocation of supervised release.