146 F.3d 1098
 98 Cal. Daily Op. Serv. 4835, 98 Daily Journal
D.A.R. 6822
Timothy ROBLES, Petitioner-Appellant,
v.
UNITED STATES of America; United States Bureau Of Prisons,
United States Marshal Service; San Diego, Warden
at San Diego Metropolitan Center,
Respondents-Appellees.
 No. 96-56762.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 3, 1997.
Decided June 23, 1998.
 
 Edmundo Bojorquez Espinoza, San Diego, California, for petitioner-appellant.
 David P. Curnow, Assistant United States Attorney, for respondents-appellees.
 Appeal from the United States District Court for the Southern District of California; Marilyn L. Huff, District Judge, Presiding. D.C. No. CV-96-02536-MLH.
 Before: CANBY and THOMPSON, Circuit Judges, and MOLLOY,* District Judge.
 CANBY, Circuit Judge.
 
 
 1
 Timothy Robles, a federal prisoner, appeals the district court's denial of his petition for a writ of habeas corpus. Robles challenges his second special parole and its revocation, which is the cause of his current incarceration. At issue is the meaning of § 401(c) of the Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91-513, 84 Stat. 1236, 1262, 21 U.S.C. § 841(c) (1982) ("Act").[1] Does § 401(c) permit the United States Parole Commission to impose a second term of special parole after it revokes the original special parole? This is a question that has caused a split in the circuits. We join the Third, Fourth, Fifth, and Seventh Circuits in holding that the Act does not authorize the Commission to impose a second term of special parole. We accordingly reverse the judgment of the district court.[2]
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 In 1989, Robles pleaded guilty to distributing cocaine. The court sentenced him to a period of imprisonment and a special parole term of seven years, pursuant to § 401(a) & (b) of the Act.[3] Robles spent about three years in prison, and then began to serve his special parole term.[4] Thus, Robles could have expected to be released from federal supervision in 1999.
 
 
 3
 In 1994, Robles violated his special parole conditions by driving while drunk. The Parole Commission revoked his special parole and sentenced him pursuant to § 401(c) to imprisonment for a term equal to the full seven-year term of his special parole, without credit for the time he had already spent on special parole. Robles thus lost credit for about two years of "street time." At this point, Robles could have expected to be released from federal supervision in the year 2001. Robles spent the first six months of his new seven year sentence in prison, with the remaining six and a half years to be served as a new term of special parole. The Commission imposed this new term of special parole pursuant to its own regulation authorizing "reparole ... under the Special Parole Term." 28 C.F.R. § 2.57(c).
 
 
 4
 In 1996, Robles violated the conditions of his second special parole by committing assault and other offenses, leading the Parole Commission to revoke his second special parole and imprison him. As a result, Robles lost credit for about a year and one half of street time. His projected release date is in the year 2000, with a further special parole term to follow.
 
 
 5
 After his latest incarceration, Robles filed a habeas petition challenging the Parole Commission's imposition of a second special parole term. The district court denied his petition on the ground that § 401(c) authorized the Parole Commission to impose a new term of special parole. Robles appeals that determination. We review de novo the district court's interpretation of a statute. United States v. Valencia-Andrade, 72 F.3d 770, 772 (9th Cir.1995).
 
 ANALYSIS
 
 6
 The factor that animates the present dispute is the nature of special parole. As the Seventh Circuit has explained:Three things are "special" about special parole: first, special parole follows the term of imprisonment, while regular parole entails release before the end of the term; second, special parole was imposed, and its length selected, by the district judge rather than by the Parole Commission; third, when special parole is revoked, its full length becomes a term of imprisonment. In other words, "street time" does not count toward completion of special parole....
 
 
 7
 Evans v. U.S. Parole Comm'n, 78 F.3d 262, 263 (7th Cir.1996). Thus, if the Parole Commission is authorized to re-impose special parole after short terms of imprisonment following revocation of prior parole, a parolee who repeatedly violates the conditions of his special paroles near the end of their terms may find himself subject to incarceration or supervision for a major part of his life, far beyond the combined term of imprisonment and special parole originally imposed by the sentencing judge. On the other hand, if the Parole Commission is confined, after the first revocation, to the imposition of ordinary rather than special parole, then its combination of imprisonment and parole cannot exceed the maximum term of imprisonment authorized upon the first parole violation. After that period, federal supervision of the offender ends.
 
 
 8
 Whether the alternative of a second period of special parole is available to the Parole Commission depends upon the proper interpretation of § 401(c), which states:
 
 
 9
 A special parole term ... may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment. A special parole term ... shall be in addition to, and not in lieu of, any other parole provided for by law.
 
 
 10
 21 U.S.C. § 841(c). We agree with those circuits that hold that this statute contemplates only one term of special parole. See Artuso v. Hall, 74 F.3d 68 (5th Cir.1996); Evans v. United States Parole Comm'n, 78 F.3d 262 (7th Cir.1996); Fowler v. United States Parole Comm'n, 94 F.3d 835 (3d Cir.1996); United States v. Robinson, 106 F.3d 610 (4th Cir.1997). When it is revoked, the "original" term of imprisonment is increased by the entire term of the special parole, resulting in a "new term of imprisonment." Nothing in the statute authorizes the Parole Commission to create a new term of special parole, or somehow to "reinstate" the old one. The old one has been revoked. The "new term of imprisonment" gives the Parole Commission the power it normally has when dealing with a fixed term of imprisonment: it can require the prisoner to serve the full term, or it can release him or her on regular parole for part of that term.[5] That is what the statute means when it states that the "person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment."
 
 
 11
 Moreover, it is only upon the first revocation of special parole that the special parole term can be added to increase the "original" term of imprisonment. "An 'original' term can be augmented only once; after that, it is not original." Evans, 78 F.3d at 265. We conclude, therefore, that the statute controls our case, and provides for no imposition of special parole by the Parole Commission after the original special parole is revoked. Because the statute is clear and unambiguous, the Parole Commission's regulation is invalid insofar as it authorizes a second special parole. Artuso, 74 F.3d at 71; Fowler, 94 F.3d at 841.
 
 
 12
 Our conclusion is strengthened by the line of cases dealing with the question of re-imposition of supervised release under the original version of the Sentencing Reform Act of 1994. See 18 U.S.C. § 3583(e)(3). Under § 3583(e)(3), the district court was authorized to "revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release ... without credit for time previously served on postrelease supervision." The question arose whether this provision, which quite closely parallels § 401(c), permitted the district court, after revocation, to re-impose a period of supervised release after the first term of such release was revoked. The overwhelming majority of circuits, including our own, held that the statute did not permit re-imposition. See United States v. Koehler, 973 F.2d 132 (2d Cir.1992); United States v. Malesic, 18 F.3d 205 (3d Cir.1994); United States v. Cooper, 962 F.2d 339 (4th Cir.1992); United States v. Holmes, 954 F.2d 270 (5th Cir.1992); United States v. Truss, 4 F.3d 437 (6th Cir.1993); United States v. McGee, 981 F.2d 271 (7th Cir.1992); United States v. Behnezhad, 907 F.2d 896 (9th Cir.1990); United States v. Rockwell, 984 F.2d 1112 (10th Cir.1993), cert. denied, 508 U.S. 966, 113 S.Ct. 2945, 124 L.Ed.2d 693 (1993); United States v. Tatum, 998 F.2d 893 (11th Cir.1993). Contra United States v. O'Neil, 11 F.3d 292 (1st Cir.1993); United States v. Schrader, 973 F.2d 623 (8th Cir.1992).
 
 
 13
 The government argues that the analogy to supervised release is imperfect, because supervised release is administered by the court and special parole is administered by the Parole Commission. We fail to see, however, why this distinction renders the analogy defective. The language of the two statutes is comparable even though not identical, and the reading given to § 3583(e)(3) by nearly all of the circuits is that, once supervised release is revoked, it disappears into the new term of imprisonment and cannot be revived. The same should hold true for special parole under § 401(c). The fact that Congress later expressly granted the district courts power to re-impose supervised release after its revocation[6] does not aid the government; that change was not retroactive and did not indicate that the majority of circuits had misread the earlier provision. See Evans, 78 F.3d at 266. There is a notable absence of any such curative amendment to § 401(c).
 
 
 14
 The government also relies on the two circuit decisions that upheld the Parole Commission's re-imposition of special parole after revocation. See United States Parole Commission v. Williams, 54 F.3d 820 (D.C.Cir.1995); Billis v. United States, 83 F.3d 209 (8th Cir.1996). With all respect, we do not find those cases to be persuasive. Williams seemed to assume that, if special parole was not available to the Parole Commission after revocation, there would be no alternative to incarcerating the parole violator for the entire new term of imprisonment. Williams, 54 F.3d at 824. If that were the case, then the unavailability of special parole would conflict with the provision of § 401(c) that the violator "may be required to serve all or part" of the new term of imprisonment. But there is a third alternative, that of ordinary parole, that undermines the reasoning of Williams. See Evans, 78 F.3d at 264-65. The Eighth Circuit's opinion in Billis primarily relied on Williams, and it also rejected the strength of the analogy to § 3583(e)(3) because the Eighth Circuit, unlike ours, is in the minority on that issue. See Schrader, 973 F.2d at 625. We therefore do not follow Williams and Billis, and adhere instead to the view of the Third, Fourth, Fifth, and Seventh Circuits.
 
 
 15
 Finally, the government contends that, if the Parole Commission lacks the power to change the sentencing court's original sentence by "imposing" a second term of special parole, then it also lacks power to destroy the original special parole by revoking it. The question, however, is what § 401(c) provides. It provides for revocation of special parole by the Commission, and it provides for the new, increased term of imprisonment that results. It also provides, without any reference to special parole, that the violator may be required to serve "all or part" of the new term. The conclusion we reach today permits the Parole Commission to "modify" the court's original sentence to the precise extent that § 401(c) specifies, but no more. There is no logical inconsistency in this position.
 
 CONCLUSION
 
 16
 Section 401(c) authorizes the Parole Commission to revoke a term of special parole, resulting in a new term of imprisonment that includes the entire period of the special parole term without credit for street time. Although the Parole Commission may choose to release the violator on regular parole, § 401(c) does not authorize it to impose a new term of special parole. It follows that Robles, when released by the Commission after his first revocation, was not released on special parole. Robles doubtless would prefer that his release be considered unconditional, but we conclude that it is more appropriately considered to be release on ordinary parole. See Evans, 78 F.3d at 263.
 
 
 17
 Upon violation of the conditions of that second parole, Robles was entitled to be treated as a violator of ordinary parole, not special parole, and to be accorded any credits for street time properly attending that status. His present projected release date and parole dates should be corrected accordingly. Any future parole from his present sentence, of course, will necessarily be ordinary parole.
 
 
 18
 Accordingly, we reverse the decision of the district court and remand the matter with instructions to issue the writ if, within a reasonable time, the Parole Commission does not recalculate Robles' sentence consistently with this opinion.
 
 
 19
 REVERSED AND REMANDED WITH INSTRUCTIONS.
 
 
 
 *
 The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation
 
 
 [1]
 Congress repealed this provision in 1984, but it remains applicable to criminal offenses committed before November 1, 1987. See Pub.L. No. 98-473, tit. II, § 224(a)(2), formerly § 224(a)(6), 98 Stat.1987, 2030 (1984), as renumbered by Pub.L. No. 99-570, tit. I, § 1005(a)(2), 100 Stat. 3207-6 (1986)
 
 
 [2]
 After the district court had entered its decision in this case, two other district courts of this circuit decided the same issue and reached the same conclusion that we do here. See Armstrong v. United States Parole Comm'n, 947 F.Supp. 1501 (W.D.Wash.1996); Fultz v. Stratman, 963 F.Supp. 926 (S.D.Cal.1997). But see Nordling v. Crabtree, 958 F.Supp. 498 (D.Or.1997)
 
 
 [3]
 Section 401(a) identifies certain prohibited drug offenses. Section 401(b) prescribes the penalties, which are various combinations of imprisonment, fines and special parole
 
 
 [4]
 Special parole "is an additional period of supervision which commences upon completion of any period on parole or mandatory release supervision from the regular sentence; or if the prisoner is released without supervision, commences upon such release." 28 C.F.R. § 2.57(a) (1996)
 
 
 [5]
 See 18 U.S.C. § 4203(b) (1994), repealed by Pub.L. No. 98-473, tit. II, § 218(a)(5), 98 Stat.2027 (1984). Section 4203 remains applicable to offenses committed before November 1, 1987. Id. at § 235(a)(1)
 
 
 [6]
 See 18 U.S.C. § 3583(h)(Supp.1998)