James E. DOLFI (98–1394); Terrance Darnell Williams (97–1381), Petitioners–Appellees,

v.

Stephen PONTESSO, Warden, Milan Federal Correctional Institution, Respondent–Appellant.

Samuel LIVINGSTON, Petitioner–Appellant,

v.

UNITED STATES PAROLE COMMISSION, Respondent–Appellee.

Dominic PASSALACQUA, Petitioner–Appellee,

v.

UNITED STATES of America, Respondent–Appellant.

Nos. 97–1381, 97–1689, 97–1880 and 98–1394.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 6, 1998.

Decided Sept. 30, 1998.

Elaine Mittleman (argued and briefed), Falls Church, VA, for James E. Dolfi.

James E. Dolfi, Cleveland, OH, pro se.

Penny R. Beardslee (argued and briefed), Federal Public Defenders Office, Detroit, MI, for Samuel Livingston.

Dominic Passalacqua, St. Clair Shores, MI, pro se.

Aaron P. Buda (argued and briefed), Cincinnati, OH, for Dominic Passalacqua.

Terrance Darnell Williams, Detroit, MI, pro se.

Patrick J. Wright (argued and briefed), Farmington Hills, MI, for Terrance Darnell Williams.

Patricia G. Blake, Mark W. Osler (argued and briefed), Office of the U.S. Attorney, Detroit, MI, for Stephen F. Pontesso.

Mark W. Osler (argued and briefed), Office of the U.S. Attorney, Detroit, MI, for U.S. Parole Commission and United States of America.

Before: MERRITT, KENNEDY, and GILMAN, Circuit Judges.

## OPINION

MERRITT, Circuit Judge.

If a person on special parole violates the terms of his release, 21 U.S.C. § 841(c) allows the United States Parole Commission to reincarcerate him for all or part of his original "special parole term," without allowing him credit on his jail time for his so-called "street time" spent on parole prior to his reincarceration. Section 841(c) prescribes

the consequences after revocation of a "special parole term" in the following language:

> A special parole term ... may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term *and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole.* A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment. A special parole term provided for in this section ... shall be in addition to, and not in lieu of, any other parole provided for by law.

21 U.S.C. § 841(c) (emphasis added). Special parole treats "street time" differently than traditional parole. Under traditional parole, a parolee gets credit for the time he served on parole if his parole is revoked. A parolee serving special parole does not get this credit, and thus he can be reimprisoned for his entire parole term no matter how long he has spent on parole.

The issue in these four consolidated cases is whether the Parole Commission, should it choose to reparole a federal prisoner after revoking his original special parole term, can reimpose a successive term of special parole and thereby prevent the parolee from receiving credit for any street time he subsequently serves on reparole. Although the statute is silent on the subject, there is no issue in this case about whether a reincarcerated offender should get credit for his first period of parole when he is reparoled after his imprisonment on his first violation. The only issue in these appeals is whether the Parole Commission can deny credit for parole time upon the second and successive revocation of parole.

The statute allows the Parole Commission to revoke credit for the original "time which was spent on special parole," but it is altogether silent on whether the Parole Commission may impose another term of special parole upon a prisoner who is reincarcerated for only a part of the original special parole term. The four petitioners in these appeals interpret this silence to mean that the Parole Commission can only impose traditional parole upon the a prisoner who was reincarcerated for violating an original term special parole, which would give them credit for any street time they subsequently served on reparole after their initial revocation and reincarceration. The government interprets this silence as implicit authority for the Parole Commission to impose successive terms of special parole upon violators who are rereleased before serving their entire special parole term in prison. To resolve this dispute, some historical background is in order.

"Special parole" had been an additional penalty for all drug offenses that was mandatory in all cases until the Sentencing Reform Act replaced it with "supervised release." Special parole was imposed by the district judge to follow the period of imprisonment; when it is revoked, the offender may be reincarcerated for the full length of the parole term without credit for street time already spent on special parole. It is governed by 21 U.S.C. § 841, which Congress repealed in 1984, but it still applies to drug crimes committed before November 1, 1987. Pub.L. No. 98–473, § 224(a)(2) (formerly § 224(a)(6)), 98 Stat. 2030 (1984); Pub.L. No. 99–570, § 1005(a)(2), 100 Stat. 3207–6 (1986).

The old Parole Commission remains in existence to control the release of prisoners sentenced prior to the effectiveness of the Sentencing Guidelines instituted by the Sentencing Reform Act. It still monitors the parole of this shrinking class of federal prisoners and deals with any parole violations these parolees may commit. Section 841(c) authorizes the Parole Commission to reincarcerate a parolee who violates the term of his original special parole for the entire term; it does not have to give the prisoner credit toward his reincarceration for the street time he spent under his original special parole term. Under the terms of the statute, a prisoner serving a five-year special parole term who commits a parole violation well into his fourth year on release can be reincarcerated for up to five additional years, notwithstanding the time he spent on parole.

The issue in these appeals stems from the Parole Commission's presumption that it also has the authority to reimpose special parole

upon reincarcerated special parolees whom it chooses to reparole. Under this system, a reincarcerated parolee who is reparoled can be put on special parole again, preventing him from receiving credit for any time he subsequently serves on parole. In practical terms, this means that the Parole Commission can subject an offender to an interminable cycle of governmental supervision through successive terms of special parole if the parolee continues to violate the terms of his release. If the Parole Commission may subject a reincarcerated parolee to successive terms of special parole, he will never receive credit for the street time he serves on reparole following his original special parole violation.

The petitioner Samuel Livingston is an example. He is currently serving thirty months in prison for violating his third term of special parole. Following his guilty plea to heroin trafficking in 1983, he was originally sentenced to five years imprisonment followed by five years of special parole. He began serving his initial term of special parole on December 15, 1987. After serving three years and four months of this original term, Livingston was reincarcerated on April 29, 1991 for violating the terms of his release. There is no question that the Parole Commission could refuse Livingston credit for those three years and four months of street time under § 841(c). Following this violation, the Parole Commission could have reincarcerated him for five additional years, until April 28, 1996. He is still in jail, however, because the Parole Commission chose to reparole him and imposed successive terms of special parole. Because he violated his second and third terms of special parole, he was not given credit for the two years and ten months he subsequently spent on reparole. As it now stands, he will again be eligible for parole on January 17, 1999. He would have been free from supervision on April 28, 1996 if he had been given credit for the street time he spent under his second and third parole terms.

The four petitioners in these consolidated appeals question the Parole Commission's presumed authority under 21 U.S.C. § 841(c) to impose a new or successive term of special parole upon them after revoking their original term. All four petitioners in these appeals received new terms of special parole following revocation of their original terms. None contests violating the conditions of his parole. The Courts of Appeals have split on the issue of whether the Parole Commission may impose a new special parole term or must instead impose traditional parole and give the offender credit for street time spent on reparole following revocation and reincarceration. The Second, Third, Fourth, Fifth, Seventh, Ninth, and Tenth Circuits have held the Parole Commission does not have statutory authority to impose successive new special parole terms after revoking an offender's initial term. The D.C. and Eighth Circuits disagree.

Section 841(c) is completely silent on the issue raised in these four petitions, as Magistrate Pepe observed in his comprehensive opinion in the case of petitioner Passalacqua. All the statute says, is, "A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment." 18 U.S.C. § 841(c). Assuming that only "part" of the new prison term is served, the statutory question, as it applies to these four petitioners, is whether the Parole Commission may impose a new term of special parole upon the prisoner's release. The answer to this question has serious practical consequences. If the answer is yes, the Parole Commission may impose a potentially unlimited succession of parole and imprisonment terms because special parolees who violate the conditions of their release do not get credit for street time. But if the answer is no, any subsequent release would be under traditional parole, which gives an offender credit for street time while on parole even if he breaks parole again.

When faced with this issue, a majority of circuits have decided that the Parole Commission does not have authority under § 841(c) to impose a new term of special parole after revoking the original term. The statute's use of the word revoke is the linchpin of these decisions. The Second, Third, Fourth, Fifth, Seventh, Ninth, and Tenth Circuits have all held that once an offender's

original term of special parole is "revoked," the special parole term disappears and is replaced by a term of imprisonment that can only be cut short under traditional parole, i.e., a term that upon reparole gives the offender credit for the street time he subsequently serves on parole. *Strong v. United States Parole Comm'n,* 141 F.3d 429, 432–33 (2d Cir.1998); *Fowler v. United States Parole Comm'n,* 94 F.3d 835, 838–39 (3rd Cir. 1996); *United States v. Robinson,* 106 F.3d 610, 612 (4th Cir.1997); *Artuso v. Hall,* 74 F.3d 68, 71 (5th Cir.1996); *Evans v. United States Parole Comm'n,* 78 F.3d 262, 264–65 (7th Cir.1996); *Robles v. United States,* 146 F.3d 1098, 1100 (9th Cir.1998); *Whitney v. Booker,* 147 F.3d 1280, 1281–82 (10th Cir. 1998).

We reached the same conclusion on an analogous point with respect to a successive term of supervised release under 18 U.S.C. § 3583(e)(3), the statute which replaced § 841(c) and contains almost identical language.[1] In *United States v. Truss,* 4 F.3d 437, 441 (6th Cir.1993), we followed the majority of the circuits and held the express language of § 3583(e)(3) "contemplates only a complete revocation of an offender's supervised release term," preventing a court from imposing successive new terms of supervised release. All the circuits which have decided that § 841(c) does not authorize the Parole Commission to reimpose special parole did so because they had previously interpreted § 3583(e)(3) in the same way. *See Robles,* 146 F.3d at 1100–01; *Strong,* 141 F.3d at 432–33; *Robinson,* 106 F.3d at 612; *Fowler,* 94 F.3d at 838, 840; *Evans,* 78 F.3d at 264; *Artuso,* 74 F.3d at 71. Given the similarity of § 841(c) and § 3583(e)(3), we agree with the Fourth Circuit that any attempt to distinguish the revocation of special parole from the revocation of supervised release is a "distinction without a difference." *Robinson,* 106 F.3d at 612.

The D.C. Circuit did not have a prior § 3583(e)(3) decision to follow when it established the minority position with respect to § 841(c). In *United States Parole Commission v. Williams,* 54 F.3d 820 (D.C.Cir.1995), it interpreted § 841(c) to allow one of two choices once an original term of special parole is revoked: either "the parolee must serve all of [the new prison] term behind bars," or he "may serve the term through a combination of incarceration and special parole." *Id.* at 824. By that reasoning, the court decided "the new term of imprisonment" could "consist of a period of confinement followed by special parole, equal to the original special parole term less the time served in prison." *Id.* The Eighth Circuit is the only other circuit that has adopted this reasoning. *See Billis v. United States,* 83 F.3d 209, 211 (8th Cir.1996) (per curiam), *cert. denied,* —— U.S. ——, 117 S.Ct. 252, 136 L.Ed.2d 179 (1996). The other circuits have roundly criticized *Williams.* Judge Easterbrook's opinion for the Seventh Circuit was the first to observe that *Williams* set up a "false dichotomy" by confining the statutory choices to "(a) re-release, and (b) re-release on special parole," without recognizing that "(c) re-release on regular parole" was the superior interpretation of the statute. *Evans,* 78 F.3d at 265. A number of other courts of appeals have agreed with this assessment. *See Robles,* 146 F.3d at 1101; *Strong,* 141 F.3d at 433; *Fowler,* 94 F.3d at 839; *Artuso,* 74 F.3d at 71.

The government argues that we should not adopt the majority rule as the law of this Circuit because we must follow our prior statement in *Truss* that § 3583(e)(3) is "ambiguous." 4 F.3d at 441. The government's theory on appeal rests on its contention that the language of § 841(c) is similarly ambiguous and that under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*

---

1. Section 3583(e)(3) authorizes the district court to:

    revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision. . . .

After a significant number of circuits had interpreted this statute not to authorize a successive term of supervised release, Congress added a new subsection to allow a sentencing court to reimpose supervised release after revocation. 18 U.S.C. § 3583(h). That change does not affect our interpretation of § 841(c), however, which has not been similarly amended. *See Strong,* 141 F.3d at 432 n. 3; *Evans,* 78 F.3d at 266.

467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), we must defer to the Parole Commission's practice of imposing successive terms of special parole under 28 C.F.R. §§ 2.52(b) and 2.57(c).[2] The D.C. Circuit used this theory of *Chevron* deference as its primary justification for the minority rule. *See Williams*, 54 F.3d at 823–24.

The government's theory is unavailing. First of all, the regulations cited are as silent on the issue as the statute itself. Both regulations merely allow the Parole Commission to "reparole" an offender without specifying what type of parole should be used. 28 C.F.R. §§ 2.52(b) & 2.57(c). Our interpretation of § 841(c) also allows the Parole Commission—in the language of the regulations—to "reparole" an offender. But unlike the Parole Commission, we believe the more reasonable interpretation of the statute's (and the regulations') silence is to assume that traditional parole should govern the release of those who do not spend their entire special parole term in jail.

The government has also overlooked a crucial distinction between criminal and civil statutes. Judicial deference under *Chevron* in the face of statutory ambiguity is not normally followed in criminal cases. *See Evans*, 78 F.3d at 265. The rule of lenity requires a stricter construction of "ambiguity in a criminal statute," not deference. *United States v. Lanier*, 520 U.S. 259, 117 S.Ct. 1219, 1225, 137 L.Ed.2d 432 (1997). When the Department of Justice made a similar argument in *Crandon v. United States*, 494 U.S. 152, 177–78, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990), Justice Scalia pointed out in a concurring opinion that *Chevron* does not require the judiciary to defer to executive interpretations of the criminal code. *Id.* at 177, 110 S.Ct. 997 (Scalia, J., concurring). His words apply with equal force to defeat the respondents' argument here:

> The law in question, a criminal statute, is not administered by any agency but by the courts.... The Justice Department, of course, has a very specific responsibility to determine for itself what this statute means, in order to decide when to prosecute; but we have never thought that the interpretation of those charged with prosecuting criminal statutes is entitled to deference. Besides being unentitled to what might be called ex officio deference under *Chevron*, [the government's] expansive administrative interpretation of § 209(a) is not even deserving of any persuasive effect. [T]he Justice Department ... knows that if it takes an erroneously narrow view of what it can prosecute the error will likely never be corrected, whereas an erroneously broad view will be corrected by the courts when prosecutions are brought. Thus, to give persuasive effect to the Government's expansive advice-giving interpretation of § 209(a) would turn the normal construction of criminal statutes upside-down, replacing the doctrine of lenity with a doctrine of severity.

The special deference required by *Chevron* is based on the expertise of an administrative agency in a complex field of regulation with nuances perhaps unfamiliar to the federal courts. *See Chevron*, 467 U.S. at 842–45, 104 S.Ct. 2778. Unlike environmental regulation or occupational safety, criminal law and the interpretation of criminal statutes is the bread and butter of the work of federal courts.

For these reasons, we affirm Judge Hood's ruling with respect to Petitioner Dolfi, reverse and remand Judge Zatkoff's ruling

---

**2.** Section 2.52(b) provides:

> If parole is revoked pursuant to this section, the Commission shall also determine, on the basis of the revocation hearing, whether reparole is warranted or whether the prisoner should be continued for further review.

Section 2.57(c) provides:

> Should a parolee be found to have violated conditions of release during supervision under his regular sentence, i.e., before commencement of the Special Parole Term, he may be returned as a violator under his regular sentence; the Special Parole Term will follow unaffected, as in paragraph (a) of this section. Should a parolee violate conditions of release during the Special Parole Term he will be subject to revocation on the Special Parole Term as provided in § 2.52, and subject to reparole or mandatory release under the Special Parole Term. Notwithstanding the provisions of § 2.52(c), a special parole term violator whose parole is revoked shall receive no credit for time spent on parole pursuant to 21 U.S.C. § 841(c).

with respect to Petitioner Livingston, and affirm Judge Edmunds and Judge Gilmore's rulings with respect to Petitioners Passalacqua and Williams. Petitioner Livingston should be granted an unconditional writ immediately since his sentence should have expired over two years ago.