[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
07/29/99
THOMAS K. KAHN
CLERK

_____

No. 97-5570
_____

D.C. Docket No. 97-71-CV-JAL

HECTOR RICARDO MANSO, JR.,

Petitioner-Appellant,

versus

FEDERAL DETENTION CENTER, MIAMI,
Patrick Whalen, Warden,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 29, 1999)

Before BLACK and BARKETT, Circuit Judges, and CUDAHY*, Senior Circuit
Judge.

_____

*Honorable Richard D. Cudahy, Senior U.S. Circuit Judge for the Seventh Circuit,
sitting by designation.

CUDAHY, Senior Circuit Judge:

Hector Manso pleaded guilty to certain drug-related offenses and was sentenced to one year imprisonment to be followed by five years special parole. When Manso violated the terms of his special parole, the Parole Commission revoked it and sent him back to prison for a further two months. He was then re-released on special parole. One year later, Manso's special parole was revoked for a second time. He was returned to prison, escaped, was rearrested and eventually served out the remainder of his special parole term in prison. He is currently doing time for the escape. Manso petitioned the district court for a writ of habeas corpus arguing that the special parole statute, see 21 U.S.C. § 841(c), does not permit the Parole Commission to impose a new term of special parole once the original term has been revoked. The district court denied the petition and Manso now appeals. We part company with the district court and hold that the Parole Commission exceeded its authority in assigning Manso an additional term of special parole. However, because we find that Manso was not entitled to an unconditional release, we affirm the district court's denial of his habeas petition.

Background

On March 5, 1984, Manso pleaded guilty to conspiracy to import marijuana in violation of 21 U.S.C. §§ 952(a) & 960(a)(1) and importation of marijuana in

violation of 21 U.S.C. §§ 952(a) & 960(a)(1) and 18 U.S.C. § 2.  He was sentenced by the United States District Court for the Southern District of Mississippi to one year imprisonment to be followed by five years special parole and five years probation.  On March 23, 1985, Manso was released from prison and began serving his five-year special parole term.  On February 24, 1988, a warrant was executed alleging that Manso had committed certain parole violations.  The Parole Commission revoked Manso's special parole and returned him to prison for two months incarceration but gave him credit for street time, i.e. his special parole time spent on the street.  On May 9, 1988, Manso was re-released on special parole.  At that time, he had 682 days remaining of the five-year special parole term and a full-term expiration date of March 22, 1990.  However, on June 4, 1989, on a tip from Manso's probation officer, a warrant was issued charging Manso with cocaine distribution.  On October 10, 1990, following a parole cancellation hearing, the Commission revoked Manso's special parole for a second time, denied him credit for any street time (including the time previously credited) and ordered that he be denied any further parole.  Manso escaped from custody on December 16, 1990 and remained at large for five and a half years.  Following his arrest, he was convicted of escape on April 28, 1997 and sentenced to 27 months imprisonment to run consecutively to the special parole violator term he was serving at the time of

3

his escape. On April 10, 1998, he was released from the special parole violator term and began serving his 27 month sentence for escape. On January 13, 1997, Manso filed a writ of habeas corpus in the district court. The case was assigned to a magistrate judge and a hearing was conducted. The district court denied the relief sought, adopting in full the report and recommendation of the magistrate judge.

Discussion

Special parole is a statutory creation that was used in sentencing up until the late 1980s. Unlike regular (or traditional) parole, whereby the Parole Commission releases an individual into the community before the end of his term of imprisonment, special parole was imposed by the district court at sentencing and followed the term of imprisonment.[1] Special parole was eventually replaced by supervised release, a similar mechanism that is administered by the courts. This appeal focuses on the special parole statute's revocation provision, § 841(c), which states:

---

[1]As the Seventh Circuit has explained: "Three things are 'special' about special parole: first, special parole follows the term of imprisonment, while regular parole entails release before the end of the term; second, special parole was imposed, and its length selected, by the district judge rather than by the Parole Commission; third, when special parole is revoked, its full length becomes a term of imprisonment. In other words, 'street time' does not count toward completion of special parole . . ." Evans v. United States Parole Comm'n, 78 F.3d 262, 263 (7th Cir. 1996).

4

A special parole term imposed under this section or section 845 of this title may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment . . .

18 U.S.C. § 841(c). Manso argues that the Parole Commission lacked the authority to impose a second term of special parole after it had revoked the original term. He concedes that the Commission may incarcerate a special parole violator for the full duration of the special parole term (or for a lesser term) without any credit for street time. But once time has been served for the parole violation, Manso maintains that the prisoner must be released unconditionally and not on special parole. In other words, the Commission, in 1988, could have imprisoned Manso for five years (the duration of his special parole term) but, having chosen to imprison him for only two months, it could not re-release him on special parole. By way of analogy, Manso points to the supervised release statute which superseded the special parole statute. See 18 U.S.C. § 3583(e). In its original form, the supervised release statute allowed a district court to modify or "revoke" an individual's supervised release and return the individual to prison to serve all or part of the remainder of his supervised release term. In construing the statute, we joined a majority of our sister circuits in holding that, where supervised release had

5

been revoked and the individual returned to prison, the court could not impose an additional term of supervised release. See United States v. Tatum, 998 F.2d 893, 895 (11th Cir. 1993).[2]

The Parole Commission has a different take on this principle as applied to special parole under § 841(c). As the agency charged with administering the statute, the Commission has construed § 841(c) to permit re-release on special parole for the remainder of the original special parole term imposed by the district court. See 28 C.F.R. §§ 2.52(b), 2.57(c) & 2.57(d). The Commission contends that its construction is reasonable because it respects the sentence imposed by the district court and, at the same time, it comports with the Congressional objective of ensuring a period of post-imprisonment supervision. In addition, the Commission rejects the analogy with supervised release on the ground that special parole is an entirely different statutory creature.

This issue is one of first impression in this Circuit. In our sister circuits that have addressed the issue, two divergent views have emerged. The first view holds that a special parole violator who has been returned to prison may be reparoled as a special parolee to continue serving the remaining, unserved portion of his special

---

[2]But see United States v. Williams, 2 F.3d 363, 364-65 (11th Cir. 1993) (applying Tatum but expressing disagreement with its rationale), discussed below.

6

parole term. The special parolee receives no credit for street time (time previously spent on special parole) but does receive credit for time spent in prison on a violator term. The District of Columbia Circuit and the Eighth Circuit have subscribed to this view. See United States Parole Comm'n v. Williams, 54 F.3d 820, 822-23 (D.C. Cir. 1995) (holding that the phrase "new term of imprisonment" in § 841(c) was sufficiently ambiguous to permit incarceration plus time spent on the street in the form of special parole); Billis v. United States, 83 F.3d 209 (8th Cir. 1996) (same). This was also the position of the district court and magistrate judge below and is the approach which the Parole Commission asks us to endorse on appeal.

The second view is that when special parole is revoked for parole violations and the offender is returned to prison, he may be released subsequently not on special parole but on regular parole. This is the view of the majority of the circuits that have addressed the issue. See Strong v. United States Parole Comm'n, 141 F.3d 429, 433 (2d Cir. 1998); Fowler v. United States Parole Comm'n, 94 F.3d 835, 840 (3d Cir. 1996) ("the parole that is imposed after special parole is revoked can only be traditional parole"); United States v. Robinson, 106 F.3d 610, 612 (4th Cir. 1997); Campos v. United States Parole Comm'n, 120 F.3d 49, 50 (5th Cir. 1997); Evans v. United States Parole Comm'n, 78 F.3d 262, 264 (7th Cir. 1996)

7

("the first revocation turns special parole into regular imprisonment, release from which is normal parole"); <u>Robles v. United States</u>, 146 F.3d 1098, 1102 (9th Cir. 1998).[3]  We subscribe to this view for several reasons.

We begin with the statutory text.  <u>See</u> <u>Kelly v. Robinson</u>, 479 U.S. 36, 43, 107 S. Ct. 353, 93 L. Ed. 2d 216 (1986).  Section 841(c) authorizes the Commission to revoke a term of special parole for a violation of its conditions and return the parolee to prison for a "new term of imprisonment" -- equal to the special parole term -- without any credit for street time.  It further provides that the prisoner be required to serve "all or part of the remainder of the new term of imprisonment."  Thus, after revoking special parole and returning the offender to prison, the Commission clearly has the authority to release him to serve the remainder of his new term on the street.  As Manso suggests, the language of § 841(c) is similar to that of the supervised release statute (now repealed).[4]  In <u>Tatum</u>, we held that, while § 3583(e) (formerly governing supervised release)

---

[3]At least one district court in this Circuit has followed this line.  <u>See</u> <u>United States v. Clemmons</u>, 945 F. Supp. 1519 (M.D. Fla. 1996).

[4]The statute provided that a court could "revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on postrelease supervision . . .".  18 U.S.C. § 3583(e)(3).  Congress has since amended § 3583 to specifically authorize a district court to reimpose supervised release after revocation.  <u>See</u> <u>United States v. Strong</u>, 141 F.3d 429, 432-33 (2d Cir. 1998) (finding "compelling reasons" to interpret §§ 3583(e) and 841(c) together); <u>United States v. Robinson</u>, 106 F.3d 610, 612 (4th Cir. 1997) ( noting that the distinctions between the two programs are "distinctions without a difference") (internal quotation and citation omitted).

8

authorized the district court to "revoke" supervised release and require the offender to serve time in prison, nothing in the statute authorized the court to impose an additional term of supervised release.  See 998 F.2d at 895.  We quoted with approval the reasoning of the Fifth Circuit:

> Section 3583(e)(3) authorizes the district court to "revoke" a term of supervised release.  "Revoke" generally means to cancel or rescind.  Once a term of supervised release has been revoked under § 3583(e), there is nothing left to extend, modify, reduce or enlarge under § 3583(e)(2).  The term of release no longer exists.

United States v. Holmes, 954 F.2d 270, 272 (5th Cir. 1992).  An additional term of supervised release could not be imposed "given the conspicuous absence of a statutory provision clearly permitting a court to do so."  United States v. Malesic, 18 F.3d 205, 208 (3d Cir. 1994).  Several other courts of appeals adopted a similar construction of § 3583(e).[5]  Applied to § 841(c), this reasoning suggests that the term of special parole, once revoked, is extinguished and replaced by "a normal term of imprisonment."  Evans, 78 F.3d at 264.  Section 841(c) allows the Parole Commission to revoke a term of special parole, but not to reimpose or extend it;

---

[5]See United States v. Koehler, 973 F.2d 132, 134-36 (2d Cir. 1992); United States v. Cooper, 962 F.2d 339, 341 (4th Cir. 1992); United States v. Holmes, 954 F.2d 270, 272 (5th Cir. 1992); United States v. Truss, 4 F.3d 437, 441 (6th Cir. 1993); United States v. McGee, 981 F.2d 271, 274-76 (7th Cir. 1992); United States v. Behnezhad, 907 F.2d 896, 898-99 (9th Cir. 1990); United States v. Rockwell, 984 F.2d 1112, 1116-17 (10th Cir. 1993).  The First and Eighth Circuits have taken a different view.  See United States v. O'Neil, 11 F.3d 292, 293 (1st Cir. 1993); United States v. Schrader, 973 F.2d 623, 625 (8th Cir. 1992).

9

the Commission can only return the violator to prison for all or part of the new term of imprisonment.

In United States v. Williams, 2 F.3d 363 (11th Cir. 1993), another panel of this Circuit expressed its disagreement with the holding in Tatum, deriving from common sense and the language of § 3583(e) a Congressional intent to allow the district court the option, after revocation of supervised release, to imprison the offender for all or, alternatively, only part of the original term of supervised release. See id. at 365 ("It is hard to imagine why Congress might authorize [a sentence of imprisonment for the full supervised release term] but nevertheless withhold authority to impose a more lenient sentence – e.g., the sentence in this case, one-half of the original supervised release term in prison and the other half on supervised release.") Congress subsequently amended the supervised release statute and mooted this disagreement. But, in any event, we believe that the concerns voiced in Williams are assuaged in the present context by certain factors unique to special parole. Recall that both the district court and the Parole Commission have a hand in the operation of special parole: the district court imposes the original term and determines its length whereas the Commission revokes it. The Commission – unlike the district court in the supervised release context – lacks any inherent authority to create or impose terms of special parole.

10

See <u>Evans</u>, 78 F.3d at 265 ("The Parole Commission cannot 'impose' a term of special parole any more than it can 'sentence' a defendant to prison."); <u>Strong</u>, 141 F.3d at 433. On the other hand, the Commission <u>does</u> have the authority to release an offender from incarceration to serve the remainder of his term under non-custodial supervision on regular or traditional parole. Thus, the Commission always has at its disposal a more lenient option than incarceration (following revocation) for the full duration of the original term.

The unresolved issue, then, is the nature of the release -- special parole or regular parole. While Congress clearly intended the possibility that a special parole violator could be released before the end of his new term of imprisonment, as a practical matter, we fail to see why release should take the form of special parole. Release into the community is, by its nature, more akin to regular parole. It is a conditional release before the end of a term of imprisonment; the Commission merely allows the offender to serve the remainder of his term under non-custodial supervision. <u>See</u> <u>Fowler</u>, 94 F.3d at 839 ("[Regular parole] is a part of a sentence of imprisonment, and has historically been a mechanism whereby one could be released yet continue to serve the sentence -- so long as the parolee complied with those rules of society that were a condition of parole. In stark contrast, special parole is a statutory creation imposed <u>in addition</u> to any term of

11

years") (internal citation omitted). Moreover, the fact that § 841(c) denies the special parole violator any credit for street time lends a commonsense attraction to the view that the special parole violator is released on regular parole. If the Parole Commission had the authority to re-release the offender to serve his special parole term anew (minus any time spent in prison following revocation), a persistent violator would be forced to commence his special parole term from scratch each time it was revoked. By creating additional terms of special parole, the Commission could trigger an endless cycle of incarceration and release on special parole.

Manso supports the majority view insofar as it holds that, when a special parole violator has been returned to prison, the Parole Commission cannot release him to another term of special parole. But he asks us to go one step further and hold that the special parole violator cannot be released on any form of parole – special or regular – and must be released unconditionally. In support of his position, Manso cites Artuso v. Hall, 74 F.3d 68 (5ᵗʰ Cir. 1996) in which the Fifth Circuit held that "when the [Commission] cancels or rescinds a term of special parole, nothing in former section 841(c) provides it with additional authority to impose a second term." Artuso, 74 F.3d at 71. The Fifth Circuit has since subscribed to the majority view -- that the parolee can be released on regular or

traditional parole -- observing that "Artuso did not reach the question of the Commission's powers beyond imposing a second term of special parole." Campos, 120 F.3d at 50. We fail to see how Artuso supports Manso's claim that the Commission lost jurisdiction over him altogether when his original term of special parole was revoked and he was imprisoned for a time. Nor does the text of § 841(c) avail Manso's cause. The offender is re-released to serve the remainder of his "new term" under non-custodial supervision and the Commission clearly retains jurisdiction over him for the duration of that term. See Fowler, 94 F.3d at 839, n.5 (noting that, under 18 U.S.C. § 4210 (repealed), the Commission's jurisdiction terminates "no later than the date of the expiration of the maximum term or terms for which [a parolee] was sentenced . . ."); Campos, 120 F.3d at 50. Thus, we reject Manso's contention that when the Parole Commission returns a special parole violator to prison, it must chose between the extremes of forcing the offender to serve the entirety of his term behind bars or, alternatively, releasing him unconditionally.[6]

Turning to the facts of the present case, the Parole Commission argues that, even applying the majority view, Manso is not entitled to the relief he seeks.

---

[6]See United States v. Robles, 146 F.3d 1098, 1102 (9th Cir. 1998) ("[The special parole violator] doubtless would prefer that his release be considered unconditional, but we conclude that it is more appropriately considered to be release on ordinary parole.").

13

Manso commenced his five-year special parole term on March 23, 1985 with a full term date of March 22, 1990. His special parole was revoked and a warrant for parole violations executed against him on February 24, 1988. Without any credit for street time, Manso's new full term date would have been five years from the date of the execution of the warrant, i.e. February 24, 1993. Applying the majority view, his subsequent release on May 9, 1988, would be treated as release on regular parole. The Commission points out that Manso's regular parole would have been canceled on June 9, 1989 when a second warrant was executed for cocaine distribution. However, he would have received credit for the time he spent in the community between May 9, 1988 and June 9, 1989 so that his full-term date would have remained February 23, 1993. When he escaped from prison on December 17, 1990, Manso had just over two years and two months of his term remaining. He was arrested on June 18, 1996 and released on April 10, 1998 – a few months shy of his full term – to begin serving a 27-month sentence for the escape. Manso actually served slightly less – and certainly not more -- than his full-five-year term. In the circumstances, we agree with the Commission that, even

14

recalculating his sentence consistent with this opinion, Manso was not entitled to an accelerated or early release date.[7]

In summary, for the foregoing reasons we disagree with the district court's construction of § 841(c) and hold that the Parole Commission erred when it released Manso on special parole for a second time. However, because Manso has failed to show that he was prejudiced by the Commission's error – and, consequently, that he is entitled to release from incarceration -- we affirm the district court's denial of his habeas petition.

AFFIRMED

---

[7]The Commission contends that notwithstanding its error in re-releasing Manso on special parole, it is not estopped from treating the May 9, 1988 release as a regular parole. It notes that, at the time, our sister circuits had not addressed the construction of § 841(c). In addition, the Commission argues that Manso has not relied on the error to his detriment. Manso appears to concede the point, having failed to submit a reply brief responding to any aspect of the Commission's argument on the facts.

15